IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

MIDDLE, DISTRICT—PITTSBURGH, 1880.

## City of Allegheny *versus* Zimmerman.

| 95 | 287 |
|----|-----|
| 136 | 533 |
| 95 | 287 |
| 148 | 364 |

| 95 | 287 |
|----|-----|
| 171 | 560 |

| 95 | 287 |
|----|-----|
| 22 SC | ⁵346 |
| 95 | 287 |
| 30 SC | ¹205 |

1. Any unreasonable obstruction of a highway is a public nuisance for which an indictment will lie. It is not, however, every obstruction on a highway that constitutes a nuisance *per se*. When it is not, and whether a particular use is an unreasonable use and a nuisance, is a question of fact to be submitted to a jury.

2. The right to partially obstruct a street is not limited to a case of strict necessity; it may be extended to purposes of convenience or ornament, provided it does not unreasonably interfere with public travel.

3. The erection of "liberty poles" is a custom sanctioned by a hundred years and interwoven with the traditions, memories and conceded rights of a free people, and unless forbidden by the authorities, has been considered the exercise of a lawful license incident to citizenship.

4. If it had been a uniform custom for the people to erect such poles in the streets of a city from its earliest history, under the implied assent of the municipal authorities, and if the one in question was so carefully erected, having due regard to the material of which it was formed, and the manner in which it was secured, so that a careful and prudent person would have apprehended no danger therefrom, it was not a nuisance *per se*.

5. As a general rule one is answerable in damages for the consequences of his faults only so far as they are natural and proximate and may, therefore, have been foreseen by ordinary forecast, and not for those arising from a conjunction of his own faults with circumstances of an extraordinary nature.

November 6th 1879. Before Sharswood, C. J., Mercur, Gordon, Paxson and Trunkey, JJ. Sterrett and Green, JJ., absent.

Error to the Court of Common Pleas No. 1, of *Allegheny county:* Of October and November Term 1879, No. 89.

(287)

[City of Allegheny *v.* Zimmerman.]

Case by George Zimmerman, by his father, Jacob Zimmerman, against the City of Allegheny,·to recover damages for injuries sustained by plaintiff, a lad eight years of age, who was injured by the fall of a pole erected on East street, near the corner of Second street, in the city of Allegheny.

During the political campaign of 1876, the Republicans of the vicinity of said streets, erected a pole about 150 feet high. The pole was about 14 × 14 inches at the base. It was composed of three sticks firmly bound together with iron bands, and its top was secured by ropes attached to chimneys of neighboring houses. To all appearances it was strong. It stood for some three or four weeks, when in a wind of unusual violence, it broke some forty feet above the ground. A portion of the upper end fell across the street, falling on one of the houses and breaking the pole into several pieces. One of the pieces it is supposed struck George Zimmerman, a lad of eight years, who was standing upon the sidewalk, some little distance away from his father's house, which was nearly opposite, on East street, from where the pole was erected. The boy's arm was fractured, and it was contended that his spine was injured.

East street is sixty feet wide and well lighted with gas. The travel upon it is local merely. The pole was erected in front of the property of John Meyer, and located about fifteen feet back from Second street, at a point about eight feet out from the curb. The neighbors of the Republican party participated generally in the pole raising, and in the evening a public meeting was held at its base. No complaint was made by any one as to the pole, nor was any doubt had as to its strength. No permission to erect the pole was asked or given.

At the trial before Stowe, P. J., defendant offered to prove by Henry Nesmith, the street commissioner, the reason why he allowed this pole to remain; that other poles had been erected there and stood, and that a hickory pole had been erected within a square or two of this place, and the next he knew of it this particular pine pole was put up and he didn't want to interfere, having allowed the one and seeing nothing dangerous in the character of the pole.

Also to prove by said witness the uniform custom of the city of Allegheny, running back to within his recollection to 1840, for parties to erect poles in the street without asking permission of the municipal authorities, and that there was nothing in this pole to make it an exception to the general rule.

Objected to as incompetent and irrelevant. Objection sustained by the court. (Sixth assignment of error.)

The defendant submitted the following points, which the court refused:

[City of Allegheny v. Zimmerman.]

1. That under all the evidence in this case the verdict should be for the defendant.

2. The erection of the pole not having been the act of the city, there is no presumption of negligence on its part, and the burden of proving negligence is on the plaintiff.

3. If the jury believe from the evidence that the pole was sound, and that its fall was caused by a wind of unusual violence, the hurt of the boy resulted from the act of God, and there can be no recovery against the city in this case.

4. If the jury believe from the evidence that the fall of the pole was caused by a defect in it, which could not be discovered by a careful examination of it as it stood, and the city had no actual notice of such defect, their verdict should be for the defendant, plaintiff's remedy being against those who erected the pole.

The refusal of these points constituted, respectively, the fifth, first, second and third assignments of error.

The duty of the street commissioner was prescribed by ordinance as follows: It shall be his duty to carry into effect, as far as may be in his power, all ordinances of the select or common councils relating in any way to the streets, lanes, alleys and commons within the bounds of the said city. And he shall pass over the same to detect and prosecute all violations of the same : to remove or cause to be removed therefrom, at the expense of the city, all obstructions or nuisances ; and he shall have full power to enter into or upon any lot, house or private property, and remove therefrom, at the expense of the owner or occupier of the same, any and all common nuisances.

In the general charge the court, inter alia, said :

" The city of Allegheny has control of all her streets. Under her charter and under the ordinances in evidence, it has become the duty of the street commissioner to prevent the streets being obstructed by nuisances, and wherever a nuisance is found upon the street and the proper official becomes aware of that fact, it is his duty to remove it, and if he does not remove it and anybody is injured by reason of its being there, or having been put there and allowed to remain, the city becomes primarily liable. * * * The plaintiff's right of recovery depends, first, on whether or not you are satisfied that this pole was put in the body of the street. There is no doubt about that. The witnesses all agree that there was a large pole—large in thickness and in height—put on the street. If that were all, and the accident had occurred immediately, without any evidence that the city officials knew of it, the city would not be liable, because she must have express or implied notice of an act of this kind; it is not the act of the city. The city only becomes liable when her officials fail to do something they ought to do, and if they have no knowledge, or could not have had knowledge of any obstruction of this kind, or of any kind put on the

14 Norris—19

[City of Allegheny *v.* Zimmerman.]

street and somebody is hurt, of course the city not having knowledge, and it not being possible that she should have knowledge of any act of that kind, cannot be held liable because the city officials and the city are guilty of no negligence under the circumstances of the case.

"So far as the facts of this case are concerned we have the street commissioner testifying that he knew the pole was in the street sometime before the accident occurred, and also stating very candidly that he did not remove it. We have then this obstruction on the street with the knowledge of the city officials whose duty it was to remove it. We have the fact that the pole fell, and I suppose you will come to the conclusion that this boy was hurt by the pole. If so, the plaintiff is entitled to recover, without the boy himself was guilty of what we term in law contributory negligence; that is to say without he was doing something he had no right to do which contributed to the accident. Not that he was climbing the pole, but that he was where he had no right to be at the time it fell. You have the fact that the boy was on the street, standing there. He was about to go to school, and wanting an apple, his mother went to get it, and he stopped a few feet from her own house to wait till she would get the apple. Before she got back—as she says—when she got to the foot of the stairs going down to the cellar, she heard the crash and ran up and found the boy injured. Is that such contributing negligence as would prevent the plaintiff's recovering? We freely and unhesitatingly say it is not. Streets are made to pass over and not to stand upon, and yet standing on the streets is not necessarily a nuisance. If you and I would stand on the street—down on the corner of Fifth and Smithfield streets, and annoy people who had a right to pass and repass by putting ourselves in their way, we would become a nuisance. We might stand on some of the unfrequented streets and not commit any nuisance if we would stand there half an hour, because nobody would be inconvenienced or hurt, but the fact that even on a frequented street, a route like this, I stop for a moment for a legitimate and proper purpose and am hurt through the illegal conduct of the city will not prevent a recovery. We therefore instruct you as a matter of law that this boy was not guilty of any act that would, so far as he or his father are concerned, prevent a recovery. * * *

"If you believe the uncontradicted evidence in this case, the pole in question was erected upon a public street in the city of Allegheny, and that after it had been there for some weeks it broke and fell. You will also perhaps be satisfied that when it fell the plaintiff's son was struck and injured by it; and that the street commissioner was aware that the pole had been erected and had been standing there previous to the accident. If you do, we think the city is liable in damages, regardless of whether the street commissioner was aware that the pole was actually dangerous or liable

to fall or not, unless you believe the plaintiff or his son was guilty of contributory negligence. Upon this latter point the evidence shows that the boy was on the street waiting for his mother to get him an apple for him to take to school. There is no evidence that he was misbehaving himself, or was playing or was doing anything out of the way, unless merely waiting upon the public highway for a few moments at the request of his mother for the purpose suggested, is such negligence as will prevent a recovery. We cannot say that such is the law. In our opinion such an act is not such concurring negligence, and upon that ground nothing stands in the way of plaintiff's recovery unless the boy was doing something more than merely standing quietly upon the street waiting till his mother should return and give him what he wanted and which the evidence does not show. * * *

"For more years perhaps than some of us have lived, it has been a common practice to erect poles, even before we were born, in the days of the revolution. They were then called liberty poles, and were indicative of a disposition to resist the aggressions of Great Britain. They were scattered around the streets in town and country, and the custom has come down more or less to later days. The custom of erecting political poles originated some place in 1840, at least that is my first recollection of it, and indeed the first recollection I have of mixing in politics is of going to the woods and getting a pole and sticking it up in the streets of the town. It has been going on ever since; they are erected on the corners of many streets, but no length of time will make that legal which is in itself illegal. Every obstruction put on the street not required for municipal purposes or required by law is a nuisance, and it does not make any difference if five, fifty or five hundred years have elapsed since the thing commenced. Therefore I say the putting of the pole there was a nuisance *per se.*

"The principles which govern this case are simply these: The erection of this pole upon the street was a nuisance *per se.* If the street commissioner, whose duty it was under the ordinance, having knowledge of the fact, allowed it to remain instead of having it removed, as it was his duty to do, and it broke, striking and injuring the boy of plaintiff, the city is liable in damages unless the father or mother or the boy himself were guilty of some negligence or misconduct in law or in fact which contributed to bring about the injury which, under the evidence, is not shown by any fact testified to in the case."

Verdict for plaintiff for $1000, and after judgment thereon defendant took this writ, her assignments of error being those noted above.

*W. B. Rodgers,* City Solicitor, for plaintiff in error.—The question of nuisance or no nuisance is for the jury, to be determined

[City of Allegheny v. Zimmerman.]

with reference to all the special circumstances: Hopkins v. Crombie, 4 N. H. 620; Bryant v. Biddeford, 39 Me. 193; Smith v. Wendell, 7 Cush. 498; Vinal v. Dorchester, 7 Gray 421; Howard v. N. Bridgewater, 16 Pick. 189; Graves v. Natick, 35 N. H. 257; 4 Id. 625; Drake v. Lowell, 13 Metc. 292; Day v. Milford, 5 Allen 98; Norristown v. Moyer, 17 P. F. Smith 355; Fairbanks v. Kerr, 20 Id. 86.

If the province of the jury in these inquiries is as extensive as we suppose, it follows that the court erred in charging that a staunch mast, erected with the assent of the owner of the fee, outside of the travelled way, in a not much frequented and well-lighted street sixty feet wide, was a nuisance *per se.* And if we are upheld in our contention that the city has the right (subject to appeal to the proper judicial tribunal) to allow all such uses of the public highway as custom and the public good require (Angell on Highways, sect. 244) then it would seem that our offers to prove a custom sanctioning these erections were relevant, and should not have been rejected.

We admit the principle that where a person has deliberately done or sanctioned an act that necessarily creates a nuisance no amount of diligence in the manner of doing it will exonerate him from liability for all immediate and natural resuls of his unlawful act or acquiescence: 2 Sharswood's Blackstone 152 n. What we contend for is, that he cannot be mulcted in damages for remote consequences: Meckling v. Kittanning Bridge Co., 1 Grant 416; Flanegan v. Philadelphia, 8 Phila. 110; Pennsylvania Railroad Co. v. Weber, 22 P. F. Smith 54; Norristown v. Moyer, *supra;* Pennsylvania Railroad Co. v. Kerr, 12 P. F. Smith 353; McGovern v. Lewis, 6 Id. 231; Morrison v. Davis, 8 Harris 171; Megraw v. Stone, 3 P. F. Smith 436; Dubois v. Glaub, 2 Id. 243; Davis v. Dudley, 4 Allen 557; Alger v. Lowell, 3 Id. 398; Hey v. Philadelphia, 31 P. F. Smith 44; Rice v. Montpelier, 19 Vt. 490; Hixon v. Lowell, 13 Gray 59.

*W. D. Moore,* for defendant in error, cited Erie City v. Schwingle, 10 Harris 388; Norristown v. Moyer, *supra,* and Woods on Nuisances, p. 82, sect. 78, and p. 780, sect. 774.

Mr. Justice MERCUR delivered the opinion of the court, January 5th 1880.

This was an action in case to recover damages for the injury which the defendant in error sustained in one of the streets of the city of Allegheny.

In September, prior to the election of 1876, a "Liberty Pole" was erected in the street by a large number of citizens, as expressive of their political convictions. The street was sixty feet wide, and and the pole stood about eight feet from the curbstone and four feet

[City of Allegheny v. Zimmerman.]

from the gutter, in front of the house of one Myers, who participated in its erection. It consisted of three pieces firmly spliced together and securely held by bands and bolts. It was otherwise secured in place by ropes tied to the chimneys of neighboring houses. It stood for some three or four weeks, when in a severe storm and gale the ropes appear to have broken, and the pole broke off some forty feet above the ground. The upper part fell, breaking into several pieces, one of which struck the defendant in error, a boy about eight years old, who was standing on the sidewalk on the opposite side of the street.

The court below held the erection of this pole on the street a nuisance per se, and if the city authorities, whose duty it was to remove it, had knowledge of its being there and allowed it to remain, and the defendant in error, without negligence on his part, was injured by its falling, the city was liable. The correctness of this view presents the main question in the case.

Any unreasonable obstruction of a highway is a public nuisance, for which an indictment will lie. It is not, however, every obstruction in a highway that constitutes a nuisance per se. When it is not, and whether a particular use, is an unreasonable use and a nuisance, is a question of fact to be submitted to a jury. Highways are intended for, and devoted to, the purpose of public travel, and every person may exercise that right, but in a reasonable manner. Due regard must be had to other rights. Thus stone, brick, sand and other materials necessary to be used in building may be placed in the street in the most convenient manner and suffered to remain for a reasonable time. This may be said to result from necessity in building. But the right to partially obstruct a street does not appear to be limited to a case of strict necessity, it may extend to purposes of convenience or ornament, provided it does not unreasonably interfere with public travel. Thus public hacks, by authority of the municipality, may stand in particular parts of the streets awaiting passengers, although the public are thereby excluded from using that part of the street most of the time. So shade trees may stand between the sidewalk and the central part of the street without constituting a nuisance per se. They may become a nuisance by disease or decay, yet the mere partial obstruction of a part of the street, when in fact such obstruction does not interfere with the public use, does not create a nuisance. It does not work that hurt, inconvenience or damage to the public necessary to constitute the offence.

The erection of liberty poles appears to have been almost coeval with the birth of our nation. As the name imports, they were erected to symbolize our liberties and as a mode of proclaiming that we had thrown off all allegiance to the government of Great Britain. At first they appear to have been used as expressive of concurrence in the principles embodied in the Declaration of Inde-

[City of Allegheny *v.* Zimmerman.]

pendence. As time passed on, they began to be erected by each political party of the country to express its greater devotion to the rights of the people. As the object of their erection was patriotic and with a view of inciting a spirit calculated to advance the public welfare, they were placed on highways and public squares. The people so desired it. The municipal authorities assented to it. It is a custom sanctioned by a hundred years and interwoven with the traditions, memories and conceded rights of a free people. Unless forbidden by the authorities, it has been considered the exercise of a lawful license incident to citizenship. Hence, in this case, no permission was asked of the authorities for leave to erect the pole, and no objection was made by them. The travel on the street where it stood was merely local. It did not occupy the street to such an extent or in such a manner that any person complained of its interfering with the public travel. To all appearance the pole was strong and sound. No doubt existed as to its strength. In the view taken by the court below, it mattered not if all these facts were proved; and further, that it was well secured; that no person had reason to apprehend any danger in its remaining there, and that it yielded only to the severe gale, yet, having broken, the city was liable for the injury sustained by the defendant in error. If it has been a uniform custom for the people to erect such poles in the streets of the city from its earliest history under the implied assent of the municipal authorities, and if this one was carefully erected, having due regard to the material of which it was formed and the manner in which it was secured, so that a careful and prudent person would have apprehended no danger therefrom, we think it was not a nuisance *per se*. It is, therefore, a question for the jury whether it was erected in such a place and manner and maintained for so long a time, under all the circumstances, as to have created reasonable apprehension of danger. It did not become a nuisance by reason of the brief time only that it remained, unless there was a change in its safe condition or some complaint made to, or action taken by, the city authorities in regard to it. But conceding that the city, at a moment before the injury, might have been indicted for suffering the pole to remain, which we do not admit, it does not necessarily follow that this action for damages can be sustained: Wood on Nuisances, sect. 324; Fairbanks *v.* Kerr, 20 P. F. Smith 86. The question still remains whether suffering the pole to remain in the street was such a probable and proximate cause of the injury as to make the municipality liable in damages. The defendant in error sustained no injury while the pole was standing there. He does not complain that it interfered with his free use of the street for all purposes of a highway. He came in no collision with it. He complains of no injury special to himself until after it broke and fell. Even if it was a public nuisance, he could not

[City of Allegheny *v.* Zimmerman.]

maintain an action for damages without proving some special damage to himself: Wood on Nuisances, sect. 829; Mechling et al. *v.* Kittanning Bridge Co., 1 Grant 416.

As a general rule, one is answerable in damages for the consequences of his faults only so far as they are natural and proximate, and may therefore have been foreseen by ordinary forecast, and not for those arising from a conjunction of his own faults with circumstances of an extraordinary nature: Morrison *v.* Davis, 8 Harris 171; McGovern *v.* Lewis, 6 P. F. Smith 231; Pennsylvania Railroad Co. *v.* Kerr, 12 Id. 353; Fairbanks *v.* Kerr, *supra;* Scott *v.* Hunter, 10 Wright 192. In the present case, the breaking of the pole was the proximate cause of the injury.

If then, the jury should find from the evidence that the pole was sound and so secured and protected that careful, prudent and sagacious persons considered it safe, and it was broken by a wind of unusual violence, the injury of the boy was a result too remote from the erection of the pole to make the city liable in damages therefor. Nor did the city become liable if the breaking occurred by reason of a defect in the pole unknown to the city authorities, and which could not be discovered by a careful examination of the pole as it stood.

In so far as the first, second, third and fourth assignments are in conflict with this opinion they are sustained. There is no error in the fifth, nor, as a whole, in the sixth, although some parts of the offer, if presented separately, might be admissible.

Judgment reversed, and a *venire facias de novo* awarded.

Justices GORDON and TRUNKEY dissented from so much of this opinion as overrules the decision of the court below that the erection and continuance of the pole on the street was a nuisance *per se.*