# Commonwealth v. Dennison, Appellant.

*Nuisance—Highways —Traction engine.*

1. A person may be convicted of maintaining a nuisance on a highway where it appears that he used on the highway daily for several months a steam traction engine and three trucks attached thereto, constituting a train nearly eighty feet long, that the train was permitted to stand on the highway to the obstruction of travel, and that at times the trucks became detached to the peril of travelers. The Act of June 30, 1885, P. L. 251, regulating the movement of machinery on the public roads does not authorize such a use of the highways; nor can such a use be justified as customary and usual where there is no evidence to show that a train of the kind in question had been moved in the township in which the road was situated, for any long period of time.

2. In such a case evidence of the defendant's instructions to his employees in regard to managing the train and his own conduct with reference thereto, are irrelevant.

3. An objection that the roads in question were not public highways,

cannot be raised for the first time in the appellate court, where it appears that during the whole course of the trial in the court below they were regarded as public roads, and the testimony of several of the witnesses described them as such.

Argued March 13, 1911.  Appeal, No. 92, April T., 1911, by defendant, from judgment of Q. S. Somerset Co., Sept. Term, 1910, No. 14, on verdict of guilty in case of Commonwealth v. Fred Dennison.  Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.  Affirmed.

Indictment for nuisance.  Before KOOZER, P. J.

The facts are stated in the opinion of the Superior Court.

At the trial the following offer was made:

Counsel for the defendant offer to prove by the witness, B. F. Stohl, on the stand that it is the customary and usual method of hauling heavy freight over the public roads of the several townships and boroughs of the county of Somerset, such as telegraph poles, railroad ties, mine props, cement, stone, sand, bark, sand crushers and such like, by the use of traction engines propelled by steam power, and that this custom has been in vogue for several years last past.

Mr. Ruppel: This is objected to first, as irrelevant and immaterial.

Second, the township of Jenner cannot be affected by the custom of other townships at distant points in the county.

Third, the offer itself indicates that the transportation is of a class of goods or property of such character as to be unusual and not in the ordinary business.

The Court: The matter of the construction and maintenance of public roads in each township in this municipality rests with the officers of that particular municipality and requires them to build and maintain roads to meet the conditions of their own district.  I am of opinion that proof of a common and ordinary use of traction engines

for hauling goods in other townships of the county, as for illustration that last given, over in the neighborhood of Sand Patch, a distance of thirty-five or forty miles from the township of Jenner, is not admissible.  Exception. [4]

Fred Dennison, the defendant, being produced and sworn:

"Q.  What instructions, if any, did you give to your men in regard to the operations of this train on the public road?"

Mr. Ruppel:  This is objected to as irrelevant and immaterial.

Mr. Shaver:  We offer to prove by the witness on the stand the manner in which the train was operated and conducted when the witness was present and also the instructions given by him to his agents and employees as to the manner of operating and conducting the same upon the highways of Jenner township; these instructions being to stop the running of the engine and train upon the approach of travelers upon the highway; the drawing of the engine and train thereto attached to the side of the roadbed as far as safety would permit; the offering of assistance by one or more of the persons in charge of the train to the travelers upon the highway in passing and repassing the said engine and train of cars; the care that the defendant charged his employees with in keeping a light and signal upon the engine when running at night and upon any of the cars or any portion of the train when the same might of necessity be left at or near the public highway during the night, and the presence and attendance of some person at such times and occasions in order to offer assistance and aid to the travelers upon the highways of said Jenner township.

Mr. Ruppel: That part of the offer which proposes to prove the manner of operating or conducting the train by the defendant or his employees at the times and places testified to by witnesses for the commonwealth is not objected to; all other matters in the offer are objected to as irrelevant and immaterial.

The Court: This offer in the main, though perhaps not wholly, seems to be framed under the Act of June 30, 1885, P. L. 251, which we think inapplicable to this case and we therefore sustain the objection as it is framed and note an exception to the defendant. [5]

The court charged in part as follows:

[So that in this case as I will submit these two questions for you to consider: First, whether the defendant had any lawful right to use this engine and attached loaded wagons on the roads described by reason of his contention that such use of the highways of Jenner township was a common and ordinary use of them. And second, if you find it was a common and ordinary use and that he was therefore in the lawful use of the highways, then did he or did he not obstruct these highways and interfere with travel in the way he is charged in this indictment?

Is then the hauling of such trains of lumber as described in this case over the roads of Jenner township by a traction engine so general that it has become an ordinary use of said roads? Until the roads of that district are commonly used by traction engines pulling trains like this, loaded as this was, and of the size and appearance this train was shown to be, the jury may find that the defendant had no legal right on the road with such a train, and that raises the question whether these roads are as the defendant contends usually and commonly used with this sort of a train, or whether as the commonwealth contends it was an unusual and extraordinary use of them.] [1]

[And on the other hand he has no legal right on the road at all with this train if such use was an unusual and not a common and ordinary one.] [2]

[If it was a common and ordinary use of the highways of the township, he was entitled to be on them, but still if he was on the highway legally he must not interfere with public travel. If it was not a common and ordinary use of the road he had no right with this train on the highway at all and if he interfered with public travel

whether by accident or otherwise he should be found guilty.] [3]

Verdict of guilty upon which the prisoner was sentenced to pay a fine of $200, and undergo an imprisonment of six months in the county jail. Defendant appealed.

*Errors assigned* were (1–3) above instructions, quoting them; (4–5) rulings on evidence, quoting the bill of exceptions.

*John R. Geyer* and *J. A. Berkey*, with them *C. L. Shaver, Valentine Hay, A. L. G. Hay* and *John E. Fox*, for appellant.—The use of the highway by the defendant was not a nuisance: Com. v. Allen, 148 Pa. 358; Com. v. Milliman, 13 S. &. R. 403; Pittsburg & Allegheny Bridge Co. v. Com., 8 Atl. Repr. 217; Huddleston v. Killbuck Twp., 7 Atl. Repr. 210; Norristown Boro. v. Moyer, 67 Pa. 355; Goodwin v. Hamilton, 19 Pa. C. C. Rep. 652; Rust v. R. R. Co., 16 W. N. C. 286; Cater v. Telephone Exchange Co., 60 Minn. 539 (63 N. W. Repr. 111).

The use to which a road can be put is elastic and progressive: Com. v. Dolley, 19 Pa. C. C. Rep. 367; Com. v. Forrest, 170 Pa. 40; Clulow v. McClelland, 151 Pa. 583; Com. v. Allen, 148 Pa. 358; Coulter v. Pine Twp., 164 Pa. 543; Macomber v. Nichols, 34 Mich. 212.

A reading of the testimony in the case discloses that there was no proof in the case that the ways named in the indictment were public highways established under legal proceeding or by prescription: Com. v. R. R. Co., 135 Pa. 256; Com. v. Slagel, 33 Pa. Superior Ct. 514.

*W. H. Ruppel* of *Ruppel & Uhl* and *Edmund E. Kiernan*, with him *John S. Miller*, district attorney, and *Ernest O. Kooser*, for appellee.—At common law any obstruction which unnecessarily incommodes or impedes the lawful use of a highway by the public is a nuisance: Com. v. Allen, 148 Pa. 358; Allegheny v. Zimmerman, 95 Pa. 287; Coulter v. Pine Twp., 164 Pa. 543; Com. v. Forrest,

170 Pa. 40; Weiser's App., 3 York Leg. Rec. 103; Goodwin v. Hamilton, 6 Pa. Dist. Rep. 705.

OPINION BY HENDERSON, J., July 13, 1911:

The defendant was convicted of maintaining a nuisance on certain highways in the township of Jenner in the county of Somerset. From the evidence at the trial it appeared that the defendant was engaged in the transportation of mine props and lumber from a tract of land in the township named. In so doing he used a steam traction engine and three trucks attached thereto, the whole constituting a train nearly eighty feet long. The engine weighed about twenty-five tons and had a width of nine or ten feet. The trucks were narrower and when loaded weighed about seven tons each. The train passed over the road daily or frequently for a period of several months and its continuous use was one of the grounds of complaint set up by the prosecution. It was also shown by the commonwealth that the engine and trucks at times were permitted to stand in, or at the side of, the traveled highway to the obstruction of, or interference with, travel; that the trucks were liable to become detached from the engine in ascending hills to the peril of travelers; that at the place where they were loaded the road was frequently obstructed by them so that citizens passing that way with horses and vehicles were deprived of the free and unobstructed use of the road; that at different times the engine broke down or trucks became detached on the road to the injury and prejudice of travelers. The court submitted to the jury two questions: first, was the use of the road in the manner disclosed by the evidence extraordinary and unreasonable; second, if not so, did the defendant in the management of his business place or permit his employees to put the engine and trucks in such places on the highway as obstructed the same and amounted to a nuisance; and the jury was instructed that unless the use of the roads of the township in the manner adopted by the defendant had become usual and

common they would be justified in finding that the defendant had no legal right on the road with such a train. This instruction variously stated in the charge constitutes the subject of the first three assignments of error. It cannot be contended that the public highways of the commonwealth are free to the use of all kinds of motor appliances and machinery. It is a part of the common law that any obstruction which unnecessarily impedes the lawful use of a highway by the public is a nuisance and indictable as such: 2 Whar. Cr. L. 15; 4 Bl. Com. 167; Com. v. Miliman, 13 S. & R. 403. The right of one to use a public highway for travel or in the transportation of merchandise is not unrestricted. The use must be in a reasonable manner and consistent with its reasonable use by others having business thereon. Whether a use is unreasonable in a particular case and therefore a nuisance is ordinarily a question of fact to be determined by a jury: Allegheny v. Zimmerman, 95 Pa. 287. No one has a right to monopolize a highway or to use it in such a manner as to exclude other persons therefrom or to unreasonably interfere with their use of it. It cannot be declared as a matter of law that the appliances of transportation used by the defendant were such as might reasonably be used in the locality in which the defendant carried on his operations. The Act of June 30, 1885, P. L. 251, regulating the movement of machinery propelled by steam on the public roads and highways of the commonwealth, did not authorize the continuous use of such motors with trains attached. It is a restrictive statute. It recognizes the practice of moving such machinery on public roads but declares specifically how that shall be done. The general adoption of such machinery for thrashing, baling hay, cutting ensilage and like service renders the use of the highway necessary in moving from place to place for the prosecution of such work, but this is a very different use from that of daily trips to and fro on the same highway. An occasional use would not create a nuisance; daily use of the same portion of

the road might do so. Moreover, the movement of a traction engine of the kind in ordinary use is a very different operation from that of the train which the defendant used. Country roads are not intended to be railway tracks. It was held in Com. v. Allen, 148 Pa. 358, that a conviction was proper for maintaining a nuisance where the defendants procured a traction engine by means of which they hauled stone from their quarry in two wagons making a train from fifty to fifty-five feet long which weighed when loaded from thirteen to fourteen tons, with which they made two trips daily from their quarry to the railroad station. The facts and reasoning in that case fully support the action of the court below in submitting the case to the jury.

In the fourth assignment exception is taken to the action of the court in rejecting evidence to show that it is the customary and usual method of hauling heavy freight over the public roads of the several townships and boroughs of the county of Somerset, such as telegraph poles, railroad ties, mine props, cement, stone, sand, bark, sand crushers and such like by the use of traction engines propelled by steam power and that this custom has been in vogue for several years last past. This offer was rejected on the ground that proof of a common and ordinary use of traction engines for hauling goods in other townships of the county was not admissible to affect the use of the roads in the township of Jenner. The offer might well have been refused because it was not proposed to show that the means of transportation referred to were like that used by the defendant and that the conditions were similar as to the highways, if the evidence were admissible on any ground. It was not a proposal to prove that a train was moved to and fro over limited portions of the highway for long periods.

The offer to prove, as set forth in the fifth assignment, the defendant's instructions to his employees in regard to the manner of managing the engine and train of cars and his own conduct with reference thereto were irrele-

vant. He was not charged with violating the provisions of the act of June 30, 1885, and it was a matter of no consequence whether he instructed his employees as proposed or not. The question was, How were the engine and cars actually operated and to what extent did they obstruct the highway and prevent its free and ordinary use?

The objection that the commonwealth failed to show that the roads over which the train was moved were public highways is made under the sixth assignment of error, which asked the court for binding instructions. The point was not raised at the trial of the case and the whole course of the trial as disclosed by the record shows that the roads in question were recognized as public highways. Indeed, the points presented by the defendant concede the roads to be public roads and the testimony of several of the witnesses describes them as public roads. One of them is called the "Pittsburg Pike;" another, "The Township Road." A roadmaster was working on one of the roads along which the engine was moving and the supervisor of the township notified the defendant on different occasions that his use of the roads was unlawful. It would be unjust to the court to sustain this objection at this time, and we think the evidence is abundant that the roads where the engine was used are public highways.

Having carefully examined the case we have no doubt of the correctness of the rulings of the court and the charge to the jury.

The judgment is affirmed and the record remitted to the court below to the end that the sentence be carried into execution.