6

## Commonwealth v. Koczwara

*Randolph C. Ryder*, Deputy Attorney General for Department of Justice, and *Kenneth W. Rice*, for Commonwealth.

*F. Joseph Thomas*, for appellant.

MOOK, P. J., July 5, 1951.—On January 25, 1951, Joseph P. Koczwara filed an appeal with this court from an order of the Secretary of Revenue of the Commonwealth of Pennsylvania suspending his operator's license for an indefinite period by reason of his failure to comply with the provisions of the Motor Vehicle Safety Responsibility Act of June 1, 1945, P. L. 1340, as amended by the Act of May 12, 1949, P. L. 1279, 75 PS §1277.

Without proper consideration by this court an order was perfunctorily entered allowing the appeal and fixing a hearing thereon to be held on March 9, 1951, and notice was duly given to the Secretary of Revenue according to the affidavit of service filed in the office of the prothonotary on February 9, 1951.

For some reason unknown to the court, the Commonwealth did not proceed with the hearing on March 9, 1951, but on March 26, 1951, a petition was filed by the Commonwealth by Randolph C. Ryder, Deputy At-

torney General, wherein he set forth that the suspension order was entered pursuant to the aforementioned act of assembly and that, "If appellant feels himself aggrieved by the order of suspension, his sole remedy for relief therefrom is by appeal to the Court of Common Pleas of Dauphin County, as provided by section 2(*b*) of the Motor Vehicle Safety Responsibility Act, supra, 75 PS §1277.2(*b*)."

On the same day the court entered the following order, which had been prepared by the counsel for the Commonwealth:

"And now, March 26, 1951, upon consideration of the annexed petition and upon motion of Kenneth R. Rice, attorney for petitioner, the Commonwealth of Pennsylvania, it is hereby ordered, adjudged and decreed that appellant show cause, if any he have, why the appeal should not be dismissed. Rule returnable sec. reg., Courtroom —, Court House, Meadville, Pa."

The matter then came before the court for argument at the next argument list of the court, to be held on May 28, 1951, and the matter is now before us for disposition.

No briefs have been filed by either side but the contention was advanced by appellant at the oral argument that the act under which the suspension order was entered is unconstitutional as violative of the due process clause of the Constitution of the United States of America. He contended that the facts would show that appellant was without fault whatsoever in the accident out of which the suspension order arose and that for the Commonwealth to require him to post security in order to retain his operator's license was to deprive him of his property without due process of law. He contended that this was so even though the act provided for an appeal to the Common Pleas Court of Dauphin County which he contended placed undue hard-

ship upon appellant in being required to go to the City of Harrisburg to litigate this proceeding.

The constitutionality of the Motor Vehicle Safety Responsibility Act of 1945 has not heretofore been passed on by the courts of this Commonwealth, although the constitutionality of its precedessor, the Uniform Automobile Liablity Security Act of May 15, 1933, P. L. 553, has not been challenged since it was upheld by the decision of the Dauphin County court in Rineer v. Boardman, 32 D. & C. 27. It must be admitted, however, that the provisions of the law now under consideration go beyond the provisions of the former act since under that act the Secretary of Revenue was not authorized to suspend the operator's license of the driver of a motor vehicle except after a judgment had been entered against him adjudicating his liability for injuries sustained by a third party. However, that decision was based at least in part upon the decision of the Supreme Court in Commonwealth v. Funk, 323 Pa. 390, 395, which we think also settles the issue now before us. In that decision the Supreme Court clearly held that: "The permission to operate a motor vehicle upon the highways of the Commonwealth is not embraced within the term civil rights, nor is a license to do so a contract or a right of property in any legal or constitutional sense."

In its opinion the court said:

"The plenary power of the legislature over the highways of the Commonwealth is of ancient standing, and seldom, if ever, has been questioned: O'Connor v. Pittsburgh, 18 Pa. 187; Com. v. Erie & N. E. Railroad Co., 27 Pa. 339; Southwark Railroad v. Philadelphia, 47 Pa. 314; Duquesne v. Fincke, 269 Pa. 112; Foley v. Beech Creek Ext. R. R. Co., 283 Pa. 588. It was said by Chief Justice Gibson in an early case: 'In England, a highway is the property of the King as parens patriae. . . . In Pennsylvania, it is the property of

the people, not of a particular district, but of the whole state; . . . Highways, therefore, being universally the property of the state, are subject to its absolute direction and control': Case of The Phila. & Trenton Railroad Co., 6 Wharton, 25, 43.

"It must be treated as elementary law that public roads are laid out and opened for the use of all persons on equal terms, that is, for all who comply with the reasonable regulations of the duly constituted authorities. The right to use a public highway for travel or in the transportation of merchandise is not unrestricted: Com. v. Dennison, 48 Pa. Super. Ct. 293. It is for the Commonwealth, acting through the legislature, to direct the conditions under which this limited right shall be exercised: City of Allegheny v. Zimmerman, 95 Pa. 287; Com. v. Doughty, 55 Pa. Super. Ct. 88. It alone has the power to regulate the manner and circumstances under which automobiles may be operated upon the highways of the Commonwealth. This power is vested in the legislature, and is based not only upon its right to control and regulate the use of the highways, but is buttressed by the inherent police power of the state."

The act in question provides, 75 PS §1277.5:

"(a) If twenty (20) days after the receipt of a report of a motor vehicle accident within this State which has resulted in bodily injury or death or damage to the property of any one person in excess of one hundred dollars ($100.00), the secretary does not have on file evidence satisfactory to him that the person who would otherwise be required to file security under subsection (b) of this section has (1) been released from liability or (2) has been finally adjudicated not to be liable or (3) has executed a warrant for confession of judgment payable in such installments as the parties have agreed to or (4) has executed a duly acknowledged written agreement providing for the

payment of an agreed amount in installments with respect to all claims for injuries or damages resulting from the accident, the secretary shall determine the amount of security which in his judgment shall be sufficient to satisfy any judgment or judgments that may be recovered against each operator or owner for damages resulting from such accident.

"(b) The secretary shall, within sixty (60) days after the receipt of such report of a motor vehicle accident, suspend the license of each operator and all registrations of each owner of a motor vehicle in any manner involved in such accident, and if such operator is a nonresident, the privilege of operating a motor vehicle within this State, and if such owner is a nonresident, the privilege of the use within this State of any motor vehicle owned by him, unless such operator or owner or both shall deposit security in the sum so determined by the secretary. Notice of such suspension shall be sent by the secretary to such operator and owner not less than ten (10) days prior to the effective date of such suspension and shall state the amount required as security."

There can be no question that the high accident toll upon the highways of the Commonwealth is one of the major problems that faces the administrative officials who are charged with maintaining our highways in a reasonably safe condition for all the users of the highway. Out of this colossal accident toll which annually takes the lives of hundreds of our citizens and causes an untold amount of property damage comes the corollary problem of making some proper provision for the injured party to obtain some further redress in the court than an empty judgment uncollectible because the negligent operator has failed to protect himself with insurance or some other form of security against loss. Hence, for years there have come before the legislature demands for a compulsory insurance law.

Such legislation has been upheld by numerous States for many years; e.g., see Opinion of the Justices, 81 N. H. 566, 129 Atl. 117, 39 A. L. R. 1023, wherein it was held that a general requirement that a motor vehicle may be operated upon the public highways only when adequate provisions have been made for compensation to persons injured because of fault in such operation is a valid law.

In its opinion the court said:

"Provisions requiring those causing the operation of motor vehicles, or certain classes of them, to furnish security for the benefit of any person who may be injured through faulty operation, have been enacted in many states; and the decisions are uniform in upholding the power to prescribe such regulations: Commonwealth v. Slocum, 230 Mass. 180; People v. Kastings, 307 Ill. 92; Ex Parte Cardinal, 170 Cal. 519; Jitney Bus Association v. City of Wilkes-Barre, 256 Pa. 463; West v. City of Asbury Park, 89 N. J. L. 402; State v. Seattle, etc., Company, 90 Wash. 416; City of Memphis v. State, 133 Tenn. 83; City of New Orleans v. Le Blanc, 139 La. 113; Willis v. City of Fort Smith, 121 Ark. 606; Hazleton v. City of Atlanta, 144 Ga. 775; Ex Parte Dickey, 76 W. Va. 576; Packard v. Banton, 264 U. S. 140."

Numerous other decisions have been decided since, some of which have been set forth in the case of Rineer v. Boardman, supra.

The present law is not a compulsory insurance law but it does put a penalty on a driver who operates his motor vehicle upon the highway without insurance and has an accident, in that he is required to post security with the Secretary of Revenue within 60 days after the accident for an amount sufficient to cover the damage of the injured party unless he comes within clearly fixed exceptions. Thus, the provisions of this act are less stringent than the legislation which requires him

to have insurance before he drives at all. If the latter type of legislation can be said to be reasonable, how can it be said that this act is an unreasonable restriction upon the right to operate a motor vehicle upon the public highway? Thus, we are of the opinion that in the interests of protecting all users of the highway this law is a reasonable restriction upon the right and privilege of operating automobiles upon the public highways and one which the legislature, under the authority of Commonwealth v. Funk, supra, had a right to make. The statute, therefore, does not violate the due process law of the Constitution of the United States of America.

However, even if it were conceded that the right to operate an automobile upon the public highway is a civil right or that the restriction was an unreasonable one, the statute is still not unconstitutional because the right of due process has been preserved, for under the provisions of the statute itself, section 2(b), it is provided that:

"Any person aggrieved by an order or act of the secretary under the provisions of sections four to eleven of this act may, within ten days after notice thereof, file a petition in the court of common pleas of Dauphin County for a trial de novo to determine whether such order or act is lawful and reasonable. The filing of such a petition shall not suspend the order or act of the secretary, unless a stay thereof shall be allowed by a judge of said court pending final determination of the matter. The court shall summarily hear the petition and may make any appropriate order or decree."

The fact that this person may have to go to Dauphin County to litigate his claim is not a denial of due process. There have been numerous legislative enactments ever since the beginning of this Commonwealth that have provided that legal proceedings in which

the Commonwealth is a party must be tried in the courts of Dauphin County. For example, the Act of May 25, 1937, P. L. 793, sec. 1, 17 PS §255, provides:

"The Court of common pleas of the county of Dauphin and the judges of the orphans' court of Dauphin County are hereby clothed with jurisdiction, throughout the State, for the purpose of hearing and determining all suits, claims and demands whatever, at law and in equity, in the court of common pleas of said county, in which the Commonwealth may be the party plaintiff for accounts, unpaid balances, unpaid liens, taxes, penalties and all other causes of action, real, personal and mixed."

This provision substantially reënacted the Act of April 7, 1870, P. L. 57. Passing on this act, the Supreme Court said in the case of Commonwealth ex rel. v. Wilkins et al., 271 Pa. 523, 527:

". . . Its evident purpose is that the Commonwealth, when suing in her own right, shall be allowed to prosecute her claims at the seat of government, and not be required to go to other parts of the State, where the defendants happen to reside. The fact that, under other legislation, she has also the privilege of proceeding wherever the defendants may be found and served with process, is beside the question; for this does not repeal the Act of 1870, either expressly or by implication, and hence she still has the absolute right to litigate her claims in Dauphin County, if she chooses so to do."

Then there is the Act of May 26, 1931, P. L. 191, sec. 2, which provides:

"All actions at law or in equity by which it shall be sought to compel a state officer to perform or to restrain him from performing any official act in the execution of the laws of the Commonwealth shall be instituted in the court of common pleas of Dauphin

County, and, for such purpose, jurisdiction of all such actions is hereby conferred upon that court."

In passing upon this act we said, in the case of Shoey et al. v. Jones, 65 D. & C. 301, 308, quoting from Hinnershitz Cemetery Company v. Miller, 32 Berks 185:

" 'One of the attributes of the sovereignty of the Commonwealth is that it can not be sued without its own consent. It is a corollary to this that the Commonwealth speaking through the legislature may designate the forum in which its officers may be required to answer the suit of a citizen. The Act of 1931 is, therefore, a valid legislative provision and, in our opinion, confers exclusive jurisdiction over the present cause of action upon the Court of Common Pleas of Dauphin County.' "

Moreover, there have been other types of proceedings where the administrative bodies of the Commonwealth have the right to grant or withhold licenses wherein the right to appeal lies only with the Court of Common Pleas of Dauphin County. An example is the Undertaker's Act of June 10, 1931, P. L. 485, 63 PS §478, which provides that any applicant or licensee whose license has been refused, suspended or revoked shall have the right of appeal to the Court of Common Pleas of Dauphin County, which act has been upheld by numerous decisions of the appellate courts of this Commonwealth.

In the Public Utility Law of May 28, 1937, P. L. 1053, sec. 903, 66 PL §1343, it is provided that:

"Whenever the commission shall be of the opinion that any person, . . . is violating, or is about to violate, any provisions of this Act; or has done, or is about to do, any act, matter, or thing herein prohibited or declared to be unlawful; . . . then and in every such case the commission may institute in the Court

of Common Pleas of Dauphin County, injunction, mandamus, or other appropriate legal proceedings, to restrain such violations of the provisions of this act . . .; and such court of common pleas is hereby clothed with exclusive jurisdiction throughout the Commonwealth to hear and determine all such actions."

This provision was attacked in the case of Pennsylvania Public Utility Commission v. Israel et al., 356 Pa. 400. The court said (page 412) :

"In adopting the Constitution of 1874 containing Article 5, Section 4, . . ., the people of this Commonwealth obviously intended that the Court of Common Pleas of Dauphin County should until otherwise directed by law 'continue as at present established', that is, continue as a court with State-wide jurisdiction in all litigation 'in which the Commonwealth may be party plaintiff'."

Therefore, if the Commonwealth has the right to enact legislation which declares that the Court of Common Pleas of Dauphin County shall have jurisdiction over all actions in which the Commonwealth is plaintiff; and legislation which declares that all actions against any State official must be instituted in the Court of Common Pleas of Dauphin County; and legislation that persons who had their right to carry on their business suspended by an administrative body of the State, must file their appeal in the Court of Common Pleas of Dauphin County, we then by no means can hold that it is a denial of due process for the legislature to require that any person who has been aggrieved by the suspension of his operator's license for failure to comply with the provisions of the Motor Vehicle Safety Responsibility Act, must file his appeal in such case with the Dauphin County court.

For the foregoing reasons the petition of the Commonwealth by its Deputy Attorney General to dismiss

this appeal must be sustained and accordingly, we enter the following

*Order*

And now, July 5, 1951, the rule heretofore granted upon Joseph P. Koczwara, appellant, to show cause why his appeal should not be dismissed, is made absolute and the appeal is hereby dismissed.