## Commonwealth v. Slater

*George Hardy Rowley,* for defendant.

*W. Allen Dill,* assistant district attorney, for Commonwealth.

ROWLEY, P. J., May 22, 1953.—This matter is before the court upon defendant's motion to quash the indictment.

The reasons assigned for the motion are:

"(1) The information does not support the indictment in that the information charging defendant with operation of a motor vehicle during suspension of his operating privilege does not charge that said operation of a motor vehicle was upon a public highway.

"(2) The information upon which the indictment is based does not contain all of the essential elements of the offense charged in said indictment.

"(3) The information upon which the indictment is based does not contain the substantial language of the Act of Assembly which defendant is charged with having violated."

The information reads:

"on the 1st day of December 1952 the defendant did then and there on the above date at 4:40 o'clock P.M.

operate his said motor vehicle bearing Penna. Registration Tag No. 843 G.S. after his operating privilege had been suspended and before such operating privilege had been restored in Violation of Section 620, Subsection H of the vehicle code of Pennsylvania."

The pertinent provisions of The Vehicle Code of May 1, 1929, P. L. 905, as amended, are:

"Section 601. Operators must be licensed. . . . No person, except those expressly exempted under this Act, shall operate any motor vehicle or tractor upon a highway in this Commonwealth, unless such person has been licensed as an operator or a learner by the department under the provisions of this Act."

"Section 620. It shall be unlawful for any person to commit any of the following acts:

(h) To operate any motor vehicle or tractor upon the highways of this Commonwealth, after the operating privilege is suspended or revoked, and before such operating privilege has been reinstated."

The Vehicle Code in section 102 defines a highway as:

"Every way or place, of whatever nature, open to the use of the public as a matter of right, for purposes of vehicular travel. The term 'highway' shall not be deemed to include a roadway or driveway upon grounds owned by private persons, colleges, universities, or other institutions."

While an information need not employ the legal phraseology or possess the technical accuracy of an indictment or describe the crime as fully and specifically as is required of an indictment, it is indispensable that the information contain all the essential elements of the offense sought to be charged, and, if it fails in this respect, it is not sufficient that the indictment supply them, because a defendant should not be required to answer a charge different from, and unrelated to, the one for which he was arrested and held to bail: Commonwealth v. Musto, 348 Pa. 300.

Motor vehicles are dangerous machines and, even when skillfully and carefully operated, their use is attended by serious dangers to persons and property. In the public interest the State may make and enforce regulations reasonably calculated to promote care on the part of all residents and nonresidents alike, who use its highways: Hess v. Pawloski, 274 U. S. 352, 356.

The Commonwealth has the power to regulate the manner and circumstances under which automobiles may be operated upon the highways of the Commonwealth. This power is vested in the legislature, and is based not only upon its right to control and regulate the use of the highways, but is buttressed by the inherent police power of the State.

The right to use a public highway for travel or in the transportation of merchandise is not unrestricted: Commonwealth v. Dennison, 48 Pa. Superior Ct. 293. It is for the Commonwealth, acting through the legislature, to direct the conditions under which this limited right shall be exercised: Commonwealth v. Funk, 323 Pa. 390.

The broad right of the Commonwealth to regulate motor vehicles in the use of a public highway does not extend to their operation in an area other than a public highway. To restrict operation not on a public highway, the Commonwealth can act only under its police power. That is to say, such a restriction must bear some relation to the health, safety or welfare of the public.

It will be noted that an operator whose license has been suspended is prohibited from operating "any motor vehicle *upon the highways* of this Commonwealth." In The Philadelphia and Trenton Railroad Company case, 6 Wharton 25, 43, it was said:

"Highways, therefore being universally the property of the State, are subject to its absolute direction and control."

As above stated, the legislature acting under its police power could, under certain circumstances, prohibit operation upon a public highway or elsewhere. This the legislature did, by subsection (*f*) of section 620, when it forbade any one, "To operate a motor vehicle while under the influence of intoxicating liquor."

It will be observed that the legislature did not here employ the phrase "upon the highways" as was done in subsection (*h*).

An operator whose license has been suspended is not necessarily an unsafe driver. He may operate a motor vehicle elsewhere than on a public highway. An intoxicated driver jeopardizes the safety of others wherever he operates, consequently he becomes subject to the police power of the State to wholly restrain operation by him: Commonwealth v. Goldscheiter, 57 D. & C. 490.

It may be doubtful whether the Commonwealth has power to prohibit operation by a driver, whose license has been suspended, other than upon a public highway. At least until the legislature so declares, it is not an offense for a suspended operator to drive in an area other than a public highway.

In the instant case, the offense sought to be charged is operation *upon a public highway*, while the driver's license is suspended. However, the information does not charge operation upon a public highway. An essential element of the crime is operation upon a *public highway*. That element is wholly lacking in the instant information. It may be argued that the evidence to be produced by the Commonwealth would establish operation upon a public highway. We may not assume that. Furtherfore, an accused is entitled to be informed of the exact charge against him before the preliminary hearing.

It is conceded that a criminal information does not need to be as full nor as exact as that required in an indictment: Commonwealth ex rel. Jenkins v. Costello, 141 Pa. Superior Ct. 183, 185. But the information must state a criminal offense committed by defendant: Commonwealth ex rel. Garland v. Ashe, Warden, 344 Pa. 407, 409. The instant information fails so to do. The Commonwealth argues that since the indictment contains what was omitted from the information, the defect in the information has been thereby supplied. In Commonwealth v. Herr, 26 Lanc. 334, it was said:

"It is well settled that the information must contain all the elements of the offense, or an indictment based upon it will be quashed, even though such indictment does contain them."

This conclusion was also reached in Commonwealth v. Hastings, 43 Pa. C. C. 332; Commonwealth v. Cochran, 22 Lanc. 188; Commonwealth v. Morningstar, 12 Pa. C. C. 34.

Exact accuracy is not required in an information, but it must charge the same offense that it afterwards charges in the indictment, and a variance in substance is fatal: Commonwealth v. Edwards, 5 Kulp 192.

"There must not be any substantial matter in the indictment not contained in the information. The in-indictment can use technical words not used in the information; but the crime charged in the indictment must be the same as charged in the information, for it is to answer the offense charged in the information that the defendant gives bail to appear at court": Commonwealth v. Loreman, 46 Pa. C. C. 250, 254.

In Commonwealth v. Musto, 348 Pa. 300, 302, the court restated the foregoing principle, saying:

"It is true that a complaint or information must contain all the essential elements of the offense sought to be charged, and, if it fails in this respect, it is not

sufficient that the indictment supply them, because a defendant should not be required to answer a charge different from, and unrelated to, the one for which he was arrested and held to bail."

It is too late to question the regularity of the preliminary proceedings after a defendant has been regularly indicted by a grand jury. However, we are here confronted by an information which charges no offense. In Commonwealth v. Dingman, 26 Pa. Superior Ct. 615, defendant questioned the regularity of his arrest by a motion to quash the indictment. The Superior Court refused to consider the illegality of the arrest but stated:

"The only question to be considered is whether the written accusation which the defendant gave bail to answer sufficiently informed the defendant that he might be put on trial for the crime charged in the indictment."

But the Commonwealth contends that failure of the information to charge defendant with operating on a public highway is supplied by the averment in the information that defendant operated "in violation of Section 620, Sub-section 'H' of the Vehicle Code of Pennsylvania." In Commonwealth v. Elsass, 63 D. & C. 276, the information charged defendant with operation of a motor vehicle upon "a public highway in the Commonwealth of Pennsylvania in violation of Section 1019-A of the Vehicle Code of Pennsylvania which reads as follows" (then quoting the section verbatim). The court there stated:

"An information charging that a defendant violated a specified section of The Vehicle Code of May 1, 1929, P. L. 905, without any further statement of the offense, is insufficient. The facts constituting the offense must be stated and not a mere conclusion. It is not sufficient for an officer to charge a defendant with

a violation of section 1019-A of The Vehicle Code of Pennsylvania, without alleging the facts which constitute the offense. It is definitely not sufficient to merely say that a certain section of The Vehicle Code which reads 'as follows' has been violated."

This conclusion adopted the decision of Commonwealth v. Gilkey, 2 Beaver 172.

In Commonwealth v. Snyder, 29 North. 310, the information stated that defendant "violated Section 1001(a) of the Vehicle Code, which reads": (the section of the code being quoted verbatim.) The court said:

"The defendant is not charged before or after the amendment with the doing of any act which would constitute an offense. Instead, he is charged each time with having violated a section of the Vehicle Code, requiring us to conclude therefrom that he did the acts necessary to constitute a violation. The unlawful act of the defendant may be charged in the language of the statute; but the instant information merely alleges a conclusion of law, without alleging any fact or facts describing or defining any act of the defendant individuated as an act prohibited in said section of the Act."

A similar conclusion upon the point was reached by the court in Commonwealth v. Bennett, 32 D. & C. 542, and in Commonwealth v. Alford, 41 D. & C. 475.

For the reasons hereinbefore stated we enter the following

*Order*

And now, May 22, 1953, this matter came on for argument upon defendant's motion to quash the indictment, and same was argued, whereupon, after due consideration, it is ordered, adjudged and decreed that the indictment be quashed and defendant discharged without day.