[Crim. No. 1948.   In Bank.—June 28, 1915.]

## In Re PAUL CARDINAL on Habeas Corpus.

MUNICIPAL CORPORATIONS—REGULATION OF "JITNEYS"—DEFINITION THEREOF—CLASSIFICATION REASONABLE.—An ordinance of the city and county of San Francisco, regulating the so-called "jitneys" in their use of the public streets, is not discriminatory in regulating them as a class, apart from other automobiles using the streets, or in making a fixed limit of the fare charged a basis of including automobiles within the class regulated.

ID.—POLICE POWER—EXPERIENCE REQUIRED OF OPERATOR.—The provision of the ordinance requiring the operator of a "jitney" to have thirty days' experience in driving motor vehicles in San Francisco is a reasonable exercise of the police power in the interest of public safety and is valid.

ID.—LICENSE CONDITIONED UPON GIVING BOND.—Section 4 of the ordinance, requiring the giving of a bond by the owner or lessee of a jitney bus conditioned that the owner or lessee will pay the damage occasioned by the jitney as therein specified, as a condition to the issuance of a license to such owner or lessee, is valid as requiring security for the protection of those who may be injured by the operation of a calling subject to police regulation.

ID.—REQUIREMENT THAT BOND BE OF A SURETY COMPANY HELD REASONABLE.—The provision of the ordinance requiring a bond by a surety company to the exclusion of all private sureties is valid, since a legislative body having the right to require security has the right to prescribe the kind that shall be acceptable, if the limitation be reasonable, and it is reasonable to require that the maker of the bond shall be a surety company and not an individual.

APPLICATION for a Writ of Habeas Corpus directed against D. A. White, Chief of Police of the City and County of San Francisco.

The facts are stated in the opinion of the court.

Jacob P. Wetzel, for Petitioner.

Alexander O'Grady, for Respondent.

ANGELLOTTI, C. J.—The petitioner is held in custody by the chief of police of the city and county of San Francisco under complaint charging him with a violation of ordinance No. 3212, N. S., in operating an automobile as a jitney bus on a public street in San Francisco without first procuring and giving a bond as required by section 4 of said ordinance.

It is contended that the ordinance as a whole is invalid, and even if this be not so, that many of its provisions, especially section 4, under which petitioner is being prosecuted, are invalid.

The ordinance is purely regulatory in nature, one designed to regulate the use of what is termed the "jitney bus" on the public streets of the city and county of San Francisco. By section 1 of the ordinance, a "jitney bus" is defined to be "a self-propelled motor vehicle, other than a street car, traversing the public streets between certain definite points or termini and conveying passengers for a fixed charge of not more than ten cents between such and intermediate points, and so held out, advertised or announced," and the same is declared to be a common carrier. The ordinance provides that before operating any jitney bus on any public street, the owner or lessee shall apply for and obtain a permit from the board of police commissioners, give a bond or provide a policy of insurance, and pay a certain license fee. The permit is to be granted upon an application showing certain things. There are numerous provisions as to the management and operation of such jitney busses, the ordinance being obviously, as we have said, purely regulatory in its nature.

The first substantial objection made to the ordinance is that no proper basis can be found for an attempt to specially regulate the use of the kind of vehicle defined as a jitney bus, that the attempt here to regulate the use of the jitney bus in the manner prescribed, without including all other motor vehicles used on the streets, and especially those used for the carriage of passengers, is a discrimination against the so-

called jitney bus that is not warranted under the constitution. It cannot successfully be disputed that the city and county of San Francisco has the right, in the exercise of its police power, to enact such reasonable regulations for the safety of the public as are not in conflict with general laws, to regulate the use of vehicles on its public streets. While in doing this it may not arbitrarily discriminate against any species of vehicle, it may classify vehicles for the purpose of regulation in such manner as is reasonable, in view of the character and manner of use and the danger to the public to be apprehended, and such classification must be upheld by the courts unless it is manifestly unreasonable or arbitrary. No reasonable person will dispute the proposition that in view of many circumstances peculiar to automobiles and their use, regulations specially applicable thereto will be sustained. And it is manifest that as to automobiles, there may be circumstances existing, by reason of the manner and character of their use on the streets, that will warrant, in the interest of the safety of the public, special regulations as to those used for a particular purpose and in a particular way. The only limitation in the matter of any such classification is that the same must be reasonable—that there is some difference between the vehicles embraced in the class attempted to be created, and other vehicles, that bears a proper relation to the regulations prescribed for those coming within the class. If the classification is reasonable, including all that may fairly be said to be similarly situated and affecting alike all of those, there is no forbidden discrimination. The question of classification is primarily one for the legislative power, to be determined by it in the light of its knowledge of all the circumstances and requirements, the presumption in the courts is in favor of the fairness and correctness of the determination by the legislative department, and the courts are not privileged to overturn that determination unless they can plainly see that the same was without warrant in the facts. This is but a statement of well settled doctrines applicable in considering such questions as the one before us. Applying them here, we entertain no doubt whatever as to the power of the board of supervisors of the city and county of San Francisco to make special regulations relating to the use on the streets of such vehicles as are described in section 1 of the ordinance, and therein termed jitney busses. It is argued

that the charge of ten cents or less for passage is no proper criterion by which to classify for such a purpose as that of this ordinance. It may well be, however, that the special danger to the public sought to be guarded against is confined to just the class of vehicles described, viz.: automobiles used on the public streets for the carriage of passengers *at a very small charge,* the same charge, or only a few cents in excess of the same charge, as that made on street cars. If this be so, it was necessary to specify some amount of fare as the dividing line, and it cannot be held that the supervisors acted unreasonably in fixing that amount at ten cents. In legislating it is often necessary, for the purpose of definiteness and clearness, that some amount or number be specified as the dividing line, and the determination of the legislative body in that regard is practically conclusive, unless it be obviously unreasonable. It is the "low fare" automobile for the carriage of passengers on the streets of San Francisco that the ordinance is designed to regulate. The real question in this connection is whether there is sufficient distinction between the operation on the public streets of these "low charge" automobiles for the carriage of passengers and the operation of self-propelled motor cars on which a much higher charge is made, to warrant the imposition of the special regulations made by this ordinance. It is a matter of common knowledge on the part of those familiar with conditions in our large cities that the comparatively recent introduction of this class of vehicle, commonly known as the "jitney," for the carriage of passengers on the public streets, for a charge closely approximating that made on street cars, in view of the almost phenomenal growth of the institution, has made clearly apparent the necessity of some special regulations in order to reasonably provide for the comfort and safety of the public. It may well be that the board of supervisors concluded that, in view of the number of this class of public conveyances that were operated upon the public streets, especially upon the principal streets already occupied almost to overflowing during the hours of heaviest traffic by street-cars and other vehicles, as well as by pedestrians at street crossings, the speed at which they would naturally be operated in order to make them pay on such a low rate of fare, and the probable lack of substantial financial responsibility on the part of very many undertaking to operate such vehicles, special regu-

lations as to condition of car, competency and fitness of operator, and the operation of the car, as well as security to protect against improper or negligent operation, were essential to the public safety. We certainly cannot say that the legislative body was not justified in so determining.

A provision of the ordinance is to the effect that it shall be unlawful for any person to operate a jitney bus on the streets "unless said person shall have had at least thirty days' experience in the operation of an automobile in the city and county of San ·Francisco," and other provisions considered in connection with this may reasonably be construed as providing that the police commission shall not grant a permit to operate a jitney in the absence of such experience on the part of the operator. These provisions are assailed as unwarrantably interfering with the right of a person to pursue a lawful calling. If we assume their invalidity, it would not necessarily follow that the whole ordinance is void. But we do not think that they are invalid, for we cannot say that it is an unreasonable exercise of the police power in the interest of public safety to require that the operator of a vehicle of this character for the carriage of passengers on the public streets of a city like San Francisco should have the practical knowledge of the streets and grades of the city with reference to the use of automobiles thereon that it may reasonably be assumed can be acquired only by operating such a vehicle thereon. In view of the difference in the facts we do not consider the case of *Smith* v. *State of Texas,* 233 U. S. 630, [Ann. Cas. 1915D, 420, L. R. A. 1915D, 677, 58 L. Ed. 1129, 34 Sup. Ct. Rep. 681], as at all in point. As to the correctness of the principles enunciated in the opinion in that case there can be, of course, no dispute.

An examination of the ordinance discloses to us nothing that would warrant us in holding the ordinance as a whole to be invalid. We say "as a whole," for we are not called upon in this proceeding to do more than to determine, if the ordinance be a valid enactment at all, whether the particular provision that petitioner is charged with violating, viz.: section 4, is valid. We are not here concerned, for instance, with any question as to the validity of the provisions relative to the forfeiture of any permit granted. No attempt has been made to take away any permit from petitioner, and he is now in no way affected by any of these provisions. If in-

valid for any reason, which we must not be understood as conceding, they simply fall without affecting any other part of the ordinance.

We come now to the particular provision of the ordinance for an alleged violation of which petitioner is held, viz.: section 4. It is substantially provided therein that "in order to insure the safety of the public," it shall be unlawful for any person to operate a jitney bus, unless there is given and in force either: 1. A bond of the owner or lessee of said jitney bus with a responsible surety company or association authorized to do business under the laws of the state of California, in the sum of ten thousand dollars, conditioned that the owner or lessee of "said jitney bus" "will pay all loss or damage that may result to any person or property from the negligent operation of or defective construction of said jitney bus, or which may arise or result from any violation of any of the provisions of this ordinance or the laws of the state of California"; or 2. A policy of insurance in a company authorized to do business in the state of California, with a total liability of ten thousand dollars, insuring said owner or lessee against loss by reason of damage that may result to any person or persons or property from the operation of said jitney bus, which policy shall guarantee payment, within the limits prescribed, viz.: an aggregate liability of ten thousand dollars, and a limitation of five thousand dollars for any one person killed or injured and one of one thousand dollars for the injury or destruction of any property, of any final judgment rendered against said owner or lessee. Other provisions are immaterial here.

We see no reason to doubt the power of the state, or any county or municipality, in the exercise of its police power of regulation, to require security in the shape of a bond or insurance policy from its licensees in all cases where the giving of such security may fairly be held to be a reasonable requirement for the protection of the public. If the power to do this exists, we are satisfied that it cannot properly be held by the courts that the requirement of such security by the ordinance before us was an unreasonable exercise of its power by the board of supervisors of San Francisco. In Freund on Police Power, it is substantially stated that a requirement of a bond to secure faithful compliance with police regulations and the satisfaction of liabilities that may arise from their violation,

or to serve as an indemnity fund for persons who have suffered by the fraudulent conduct of the business, appears to be permissible, as a subsidiary measure of police control, wherever a license may be required by way of regulation. (Sec. 40.) The most common instance of the requirement of such a bond is probably that of the licensed liquor dealer, and a requirement that he give a bond for damages that may be caused third persons by illegal sales is declared valid. (See Black on Intoxicating Liquors, sec. 46; Woollen and Thornton on Intoxicating Liquors, sec. 149.) In *Wiggins* v. *Chicago,* 68 Ill. 372, a requirement of a bond of one thousand dollars from a licensed auctioneer conditioned for a due observance of an ordinance regulating the business was sustained as a reasonable requirement. In *Hawthorne* v. *People,* 109 Ill. 302, [50 Am. Rep. 610], an act required of any one operating a butter and cheese factory among the farmers of a neighborhood a bond, intended, as the court substantially said, to secure those who intrust their property to the keeping of the manufacturer against fraud or misappropriation by him of their property, just as the saloon keeper may be required to give security that he will not violate the law and thus inflict injury on his customers. The requirement was upheld. On principle it would seem that security for the protection of those who may be injured or damaged by the negligent or illegal operation of a business or calling subject to police regulation may be required, wherever such a requirement is not unreasonable, the requirement being as already suggested, an exercise of the police power of regulation for the protection and safety of the public. We have found no decision that holds otherwise. Of course no such interference with the right of a person to carry on a legitimate business would be valid except where justifiable as a proper exercise of the police power of regulation, and the decision in the case of *People* v. *Coolidge,* 124 Mich. 664, [83 Am. St. Rep. 352, 50 L. R. A. 493, 83 N. W. 594], in which an act requiring all merchants who sell farm produce on commission to execute a bond in the sum of five thousand dollars conditioned for the faithful performance of their contracts, was held to be unconstitutional, was put upon the ground that there was nothing in the particular business there involved that required regulation, as did hack drivers, peddlers, saloons, etc., but that the business was a legitimate commercial business, for the

carrying on of which neither license-fee nor bond could be required. *Gibbs* v. *Tally*, 133 Cal. 373, [60 L. R. A. 815, 65 Pac. 970], and the cases following it, are not at all in point. The statute there held invalid was one requiring the *owner* to give a bond to secure laborers, materialmen, and subcontractors, with whom he had no contract, against default on the part of *their* debtor, the building contractor. No foundation for the imposition of any such burden on the owner, who was entirely without responsibility, legal or moral, to those choosing to deal with the contractor, could reasonably be found. In the case at bar we have persons undertaking to pursue upon the public streets of the city and county of San Francisco an occupation that if negligently conducted is fraught with danger not only to those who may be passengers, but also to the public generally upon those streets. The occupation is one that may properly be regulated by the public authorities, and the insistence on a bond or other security in a reasonable amount to indemnify those who may be injured by the negligent or illegal operation of the business appears to us not to be beyond the range of reasonable requirement.

It is suggested that the requirement that the bond be given by a responsible surety company or association authorized to do business under the laws of the state of California, to the exclusion of personal sureties, renders the provision invalid. We know of no constitutional right that one has to give any particular kind of security. A legislative body having the right to require the giving of security necessarily has the right to prescribe the kind that shall be given, with the limitation always, of course, that its provisions in this regard shall not be unreasonable, or based upon any other consideration than its conclusion as to what is necessary for the protection of those concerned. We had occasion in *County of San Luis Obispo* v. *Murphy*, 162 Cal. 588, 591, [Ann. Cas. 1913D, 712, 123 Pac. 808], to consider an act providing for the payment by the state, county, etc., of the premiums on official bonds of state, county, etc., officers when those bonds were procured from such a company or association. The act was upheld against the objection that it discriminated in favor of such bonds and against bonds with personal sureties. As one of the grounds of decision it was substantially said that the theory of the legislature probably was that the public interests would be better protected by such bonds, and that taking into

consideration the provisions of our law relating to the conditions and official supervision under which such surety companies are allowed to transact their business within this state, it might well be concluded that the surety company bond is a better and safer bond so far as the public interest is concerned. The likelihood of finding the security given insufficient from one cause or another when the time for collection arrives, is obviously much greater in the case of the personal surety than in that of the company or association engaged in the business only with the certificate and under the constant supervision of officers of the state. Then, too, the necessity of giving and maintaining such a bond may well be considered as more conducive to a careful operation of his business by the jitney bus owner or lessee than would otherwise be had. We see no warrant for holding that the supervisors were not justified in concluding that such a bond as that prescribed in the ordinance was essential.

It is not claimed that the complaint does not sufficiently state a public offense, if section 4 of the ordinance is a valid enactment.

No other point is made against the ordinance that calls for discussion here. We are unable to perceive any ground upon which it may fairly be held that section 4 of the ordinance is not valid.

The writ is discharged and the petitioner remanded to custody.

Shaw, J., Melvin, J., Sloss, J., Lorigan, J., and Lawlor, J., concurred.