CITY OF MEMPHIS *et al. v.* STATE *ex rel.* RYALS.*

(*Knoxville.* September Term, 1915.)

1. CONSTITUTIONAL LAW. Construction.

Under Const. U. S., Amend. 14, prohibiting the denial to any person of the equal protection of the law, and Const. Tenn., art. 1, sec. 8, prohibiting the imprisonment or execution of any person, or depriving him of life, liberty, or property, except by judgment of his peers or the law of the land, and article 11, sec. 8, forbidding class legislation, the same rules will be applied to classifications therein as to the classifications made in legislative enactments, so that the basis for a classification must be natural, and not arbitrary or capricious, and must rest on some substantial difference; but the classification is not invalid merely because it does not depend on scientific or marked differences. (*Post, pp.* 88-99.)

Acts cited and construed: Acts 1915, ch. 60.

Cases cited and approved: State ex rel. v. Schlitz Brewing Co., 104 Tenn., 730; Orient Ins. Co. v. Daggs, 172 U. S., 562.

Cases cited and distinguished: Motlow v. State, 125 Tenn., 547; Lindsley v. National Carbonic Gas Co., 220 U. S., 61.

Constitution cited and construed: Art. 1, sec. 8; art. 11, sec. 8.

2. CARRIERS. Constitutional law. Class legislation. Regulation of jitneys. Private conveyances.

Acts 1915, ch. 60, regulating jitneys as common carriers, and prohibiting their operation, except upon prescribed conditions, does not make an arbitrary classification between jitneys and privately owned automobiles, since the uses and character of operation of the two classes are distinct. (*Post, pp.* 99, 91.)

3. CONSTITUTIONAL LAW. Class legislation. Regulating jitneys. Street cars.

Acts 1915, ch. 60, regulating jitneys as common carriers, and prohibiting their operation, except upon prescribed conditions,

*As to regulation of jitney busses, see note in L. R. A., 1915 F. 840.

City of Memphis v. State *ex rel.*

does not make an arbitrary classification between jitney busses and street railway cars, since the jitney runs upon no track, and is less substantial and more dangerous than the street car, thus presenting essential differences, properly the subject of classification. (*Post, p.* 91.)

4. **CONSTITUTIONAL LAW. Class legislation. Regulation of jitneys. Taxicabs.**

Acts 1915, ch. 60, regulating jitneys as common carriers, and prohibiting their operation, except upon described conditions, does not make an arbitrary classification between jinteys and taxicabs, since taxicabs are for hire at a fare proportioned to the length of the trips of the several passengers, without regard to route, while the jitney carries passengers upon a designated route, and the investments in the two classes of machines are widely different. (*Post, pp.* 91-93.)

Cases cited and approved: The Taxicab Cases, 82 Misc. Rep., 94; Yellow Taxicab Co. v. Gaynor, 159 App. Div., 893; Fifth Ave. Coach Co. v. New York, 221 U. S., 467; Provident Institution v. Malone, 221 U. S., 660.

Case cited and distinguished: St. John v. New York, 201 U. S., 633.

5. **CARRIERS. Carriers of persons. "Jitneys."**

A "jitney" is a self-propelled vehicle, other than a street car, traversing the public streets between certain definite points or termini, and, as a common carrier, conveying passengers at a five-cent or some small fare, between such termini and intermediate points, and so held out, advertised, or announced. (*Post, pp.* 93-95.)

Case cited and distinguished: Ex Parte Cardinal (Cal.), 150 Pac., 348.

6. **CONSTITUTIONAL LAW. Class legislation. Arbitrary classification.**

Under the provisions of the constitution prohibiting class legislation, it is not sufficient to invalidate a statute merely to show points of similarity in the thing classified, and the thing ex-

City of Memphis v. State *ex rel.*

cluded from the classification; but it must be shown that the classification is unreasonable and impracticable. (*Post, pp.* 95-97.)

Cases cited and approved: Mehlos v. Milwaukee, 156 Wis., 591; Central Lumber Co. v. South Dakota, 226 U. S., 157; People v. Coolidge, 124 Mich., 664; Gibbs v. Talley, 133 Cal., 373.

7. **MUNICIPAL CORPORATIONS.** Streets. Legisative control. Jitneys.

The legislature, being endowed with police power to regulate the use of streets in public places, may prescribe the conditions with which jitneys, being common carriers, must comply in order to operate. (*Post, pp.* 97, 98.)

Cases cited and approved: Fifth Ave. Coach Co. v. New York, 194 N. Y., 19; State v. Howell (Wash.), 147 Pac., 1159; Greene v. City of San Antonio (Tex. Civ. App.), 178 S. W., 6; Ex Parte Dickey (W. Va.), 85 S. E., 781.

---

FROM SHELBY.

---

Appeal from the Circuit Court of Shelly County.— A. B. PITTMAN, Judge.

C. M. BRYAN, LEO GOODMAN and CHAS. T. CATES, JR., for appellants.

CARUTHERS EWING, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

Ryals, as relator, sued out a writ of *habeas corpus* to effect his release from the custody of the chief of police of the city of Memphis; he having been arrested for a violation of Acts 1915, c. 60. The circuit judge

released the relator, holding that act void, because violative of the constitutional provisions that inhibit arbitrary class legislation.  Const. Tenn., art. 1, sec. 8, and article 11, sec. 8; fourteenth amendment of the Constitution of the United States.

The act thus attacked was evidently passed for the regulation of a class of motor vehicles recently brought into service in the principal cities of the state, commonly known as "jitneys."

By section 1 of the act it is provided that any person, firm, or corporation operating for hire any public conveyance propelled by steam, gasoline, or other power, "for the purpose of affording a means of street transportation similar to that ordinarily afforded by street railways (but not operated upon fixed tracks) by indiscriminately accepting and discharging such persons as may offer themselves for transportation," is declared a common carrier, and the business of all such carriers is declared to be a privilege.

Section 2 of the act makes unlawful the use and occupation of any street or alley or other public place in any incorporated city or town without first obtaining from such city or town a permit or license by ordinance giving the right to so use or occupy such street, alley or other public place—the permit or license to embody "such routes, terms and conditions as such city or town may elect to impose:  Provided, however, that no such permit or license shall be granted which does not require the execution and filing of a bond," as provided by section 3.

Section 3 provides that before such common carrier may conduct his business he must execute a bond, with good and sufficient surety or sureties, in no case to exceed $5000 for each car operated, conditioned that such common carrier will pay any damage that may be adjudged finally against such carrier as compensation for loss of life or injury to person or property inflicted by such carrier or caused by his negligence.

Section 4 makes it unlawful for such common carrier to use or occupy any street or alley or other public place without the permit or license aforesaid or without first executing and filing the bond as required by section 3.

The subsequent sections need not be outlined, since the provision requiring the execution of a bond is the only one inveighed against by relator, charged as he was with the operation of a jitney automobile without having executed such bond.

The circuit judge, after calling attention in his opinion to the fact that the act does not limit the condition of the bond to a protection of the passengers of such a common carrier, but includes the payment of damages by reason of negligence resulting in injury to pedestrians or to property generally, expressed the view that the provision of the statute might be upheld if the bond required had to do only with the protection of passengers, and further said:

"This act imposes upon the carrier burdens not only in his character of common carrier, but also burdens in his capacity of an ordinary user of the streets. Us-

ing the same kind of vehicle, with the same motor power, in identically the same manner as private operators of automobiles, he is required to give a bond to protect other users of the streets against his negligence. No such requirement is made of any other person using similar vehicles.''

The act was therefore held invalid, with result that the city has appealed to this court.

Under the provisions of the State and national constitutions, above referred to, the same rules are applied as to the validity of classifications made in legislative enactments. When an effort is thus made to distinguish and classify as between citizens, the basis therefor must be natural, and not arbitrary or capricious. The classification must rest on some substantial difference between the situation of the class created and other persons to whom it does not apply. *State ex rel.* v. *Schlitz Brewing Co.*, 104 Tenn., 730, 59 S. W. 1033, 78 Am. St. Rep., 941, and cases cited.

However, classification for such purposes is not invalid because not depending on scientific or marked differences in things and persons, or in their relations. It suffices if it is practical, and it is not reviewable unless palpably arbitrary. *Orient Ins. Co.* v. *Daggs*, 172 U. S., 562, 19 Sup. Ct., 281, 43 L. Ed., 552, cited with approval in *State ex rel.* v. *Schlitz Brawing Co.*, supra.

''When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be as-

City of Memphis v. State *ex rel.*

sumed. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.'' *Motlow* v. *State,* 125 Tenn., 547, 145 S. W., 177, following *Lindsley* v. *National Carbonic Gas Co.,* 220 U. S., 61, 31 Sup. Ct. 337, 55 L. Ed., 369, Ann. Cas., 1912C, 160.

Having these principles in mind for guidance, we may conceive that, from the experience developed by the operation of jitney automobiles at the time of the enactment of the regulatory statute, the legislature deemed the provision for a bond to be necessary because it realized that by reason of the small fare charged by such operators the tendency would be for them to invest in cheap or secondhand machines, oftentimes fragile in character; that frequently the vehicle would not be owned outright, but only subject to a lien or by way of lease; that, by reason of the limited size and carrying capacity of the conveyances, an increased congestion of the streets and public places would follow, as well as an overtaxing of the capacity of the given conveyance; that they would have no fixed track upon which to run, moving at will over the entire street surface, and in their crossing over and stopping along the curb between crossings, or at street crossings, danger to persons and property would be augmented; that, by reason of the competition of the many engaged in the business, frequent contests between the operators for points of vantage in the streets would follow; that there was a tendency fraught with

danger in the many so engaged seeking the streets of heaviest travel for passengers, thus leading to conges- tion, as well as in hasty efforts made to head off and divert those waiting on the curb as offerers for passage on street railways; that the desire and necessity to collect many small fares would tempt operators to indulge in swift and careless running; that by reason of receiving and discharging passengers at short, unscheduled intervals, there would be an interruption of traffic and an endangering of other vehicles in the streets; that by reason of the small investment required many who are financially irresponsible would embark in the business; that the collection of damages from the operators would be difficult, and in many instances impossible.

We come now to the test of the law made by the circuit judge, and which led him to denounce the classification—the inclusion of jitney automobiles and the exclusion of automobiles privately owned and used. We think that such a classification is easily sustainable by reason of the applicability of many of the considerations above enumerated. The privately owned vehicle ordinarily has but a single destination, at which it comes to rest. Its use is not urged to or towards the limit in order to the reaping of profits. We are unable to see merit in the distinction taken by the circuit judge, when he intimated the opinion that a classification of the jitney from privately used automobiles might be sustained only so far as indemnity for damages done to passengers was concerned. Most of the

dangers that surround such passengers in a substantial sense beset also the users of the street.

Contrasting the jitney with street railway cars, to ascertain whether there be arbitrary classification: The street railway, by reason of its having tracks at definite places assigned it by municipal authority, on which tracks its traffic must move, is less liable to cause injury; and the substantial nature of its cars, and particularly the fixity, permanency, and great cost of its roadbed, give an anchored indemnity in respect of its liability for negligence. Other marks for differentiation, appearing in the above outline of considerations imputable to the legislative mind, need not be reiterated.

Assuming for test purposes (without meaning to decide or to intimate a decision) that taxicabs are common carriers, and that they are not included within the terms of the statute, does their exclusion operate to make the classification unreasonable and arbitrary?

The word "taxicab" is one of recent coinage, to describe a motor-driven conveyance that performs a service similar to the cab or hackney carriage, held for hire at designated places at a fare proportioned to the length of the trips of the several passengers, who are taken to be carried to destinations without regard to any route adopted or uniformly conformed to by the operator. The jitney holds itself out to accommodate persons who purpose traveling along a distinct route chosen by the operator. Operators of taxicabs have not the temptation or necessity, we may assume,

of choosing the most traveled streets, since those less traveled afford them better opportunities to serve the object their owners have in view. It may be that a larger investment is ordinarly required to enter the taxicab business than the other, and that the conveyances would be less in number on this account, as well as because of the greater fare charged, not to mention other differences to be drawn from the above summary. In New York an ordinance regulating the conduct of the business of public hackmen has been held not to be discriminatory, because it applied only to those engaged in transporting passengers for hire who solicit business on the streets, or because taximeters are required to be attached to motor-driven vehicles only. *The Taxicab Cases,* 82 Misc. Rep., 94, 143 N. Y. Supp., 279, affirmed under style *Yellow Taxicab Co.* v. *Gaynor,* 159 App. Div., 893, 144 N. Y. Supp., 299.

The supreme court of the United States has held that the inclusion of producing, and the exclusion of non-producing, venders of milk in legislation was valid, the court saying:

"A picture is exhibited of producing and non-producing venders (of milk) selling milk side by side; the latter, it may be, a purchaser from the former; the act of one permitted, the act of the other prohibited or penalized. If we could look no farther than the mere act of selling, the injustice of the law might be demonstrated; but something more must be considered. Not only the final purpose of the law must be consid-

ered, but the means of its administration—the ways it may be defeated. Legislation, to be practical and efficient, must regard this special purpose as well as the ultimate purpose." *St. John* v. *New York,* 201 U. S., 633, 26 Sup. Ct., 554, 50 L. Ed., 896, 5 Ann. Cas., 909, affirming 178 N. Y. 617, 70 N. E., 1104.

The same court upheld a classification of vehicles (in respect of their respective owners' rights to use the streets) by which advertising wagons or busses were excluded, while ordinary business wagons, when engaged in the usual business of the owner, and not used merely or mainly for advertising, were permitted to use the streets while exhibiting business notices. *Fifth Ave. Coach Co.* v. *New York,* 221 U. S., 467, 31 Sup. Ct., 709, 55 L. Ed., 816, affirming 194 N. Y. 19, 86 N. E., 824, 21 L. R. A. (N. S.), 744, 16 Ann. Cas., 695. See, also, *Provident Institution* v. *Malone,* 221 U. S., 660, 31 Sup. Ct., 661, 55 L. Ed., 899, 34 L. R. A. (N. S.), 1129.

The word "jitney" we think may be defined to be a self-propelled vehicle, other than a street car, traversing the public streets between certain definite points or termini, and as a common carrier conveying passengers at a five-cent or some small fare, between such termini and intermediate points, and so held out, advertised, or announced.

In the case of *Ex parte Cardinal* (Cal.), 150 Pac., 348, where was involved an ordinance substantially so defining a jitney, and requiring the owner, before operating such machine, to obtain a permit, and to give a

bond or provide a policy of insurance to protect those injured, the court upheld the ordinance as not creating an arbitrary class, and said:

"It is manifest that as to automobiles there may be circumstances existing, by reason of the manner and character of their use on the streets, that ·will warrant, in the interest of the safety of the public, special regulations as to those used·for a particular purpose and in a particular way. . . . We entertain no doubt whatever as to the power of the board of supervisors of the city and county of San Francisco to make special regulations relating to the use on the streets of · such vehicles as are described in section 1 of the ordinance, and therein termed jitney busses. It is argued that the charge of ten cents or less for passage is no proper criterion by which to classify for such a purpose as that of this ordinance. It may well be, however, that the special danger to the public sought to be guarded against is confined to just the class of vehicles described, viz., automobiles used on the public streets for the carriage of passengers at a very small charge. . . . It is the 'low fare' automobile for the carriage of passengers on the streets ·of San Francisco that the ordinance is designed to regulate. The real question in this connection is whether there is sufficient disinction between the operation on the public streets of these 'low charge' automobiles for the carriage of passengers and the operation of self-propelled motor cars on which a much higher charge is made, to warrant the imposition of the special regulations made by

this ordinance. It is a matter of common knowledge on the part of those familiar with conditions in our large cities that the comparatively recent introduction of this class of vehicle, commonly known as the 'jitney,' for the carriage of passengers on the public streets, for a charge closely approximating that made on street cars, in view of the almost phenomenal growth of the institution, has made clearly apparent the necessity of some special regulations in order to reasonably provide for the comfort and safety of the public. It may well be that the board of supervisors concluded that, in view of the number of this class of public conveyances that were operated upon the public streets, especially upon the principal streets already occupied almost to overflowing during the hours of heaviest traffic by street cars and other vehicles, as well as by pedestrians at street crossings, the speed at which they would naturally be operated in order to make them pay on such a low rate of fare, and the probable lack of substantial financial responsibility on the part of very many undertaking to operate such vehicles, special regulations as to condition of car . . . as well as security to protect against improper or negligent operation, were essential to the public safety. We certainly cannot say that the legislative body was not justified in so determining.''

Counsel for the appellee relator treats his case against the act as made out if he be able to present some points of similarity in the jitney and the taxicab or privately operated automobile. But mathematical

or logical exactness, in every aspect, in a division for classification is not always possible, and it is not required in order to validity. "The best that can be done is to keep within the clearly reasonable and practicable. That is accomplished where there are such general characteristics of the members of the class as to reasonably call for special legislative treatment. That may be true, generally, and yet some such characteristics sometimes may be found to exist outside the boundaries of the class." *Mehlos* v. *Milwaukee,* 156 Wis., 591, 146 N. W., 882, 51 L. R. A. (N. S.), 1009, Ann. Cas., 1915C, 1102; *Central Lumber Co.* v. *South Dakota,* 226 U. S., 157, 33 Sup. Ct., 66, 57 L. Ed., 164; *Motlow* v. *State,* supra; 6 R. C. L., p. 360, sec. 373.

We therefore hold that the segregation of the jitney automobile for regulation in the matter of the execution of an indemnity bond by its owner is not vicious or unreasonable class legislation.

Counsel for appellee commends to our consideration *People* v. *Coolidge,* 124 Mich., 664, 83 N. W., 594, 50 L. R. A., 493, 83 Am. St. Rep., 352, and *Gibbs* v. *Tally,* 133 Cal., 373, 65 Pac., 970, 60 L. R. A., 815. In the first of these cases it was held that an act, requiring all merchants who sell farm produce on a commission to execute a bond of $5,000 to faithfully perform their contracts, was unwarranted class legislation, and that the act could find no support in the police power, since there was nothing in the business hostile to the comfort, health, morals, or even convenience of a community. The second case involved an effort on the part

City of Memphis v. State *ex rel.*

of the legislature to require the owner of property, who contracts for the placing of a building thereon, to furnish a bond for the benefit of laborers and material-men on terms that would make him liable for twenty-five per cent. above the contract price. The court held that the act there in question was not justifiable by the police power, and was violative of constitutional provisions pointed out.

We fail to see the pertinency of these cases to the one at bar, which involves the right to regulate a common or public carrier in respect of the use of public streets.

It is too clear for extended discussion that it was competent for the legislature under the police power to regulate the use of the streets and public places by jitney operators, who, as common carriers, have no vested right to use the same without complying with a requirement as to obtaining a permit or license. The right to make such use is a franchise, to be withheld or granted as the legislature may see fit. Dill. Mun. Corp., secs. 1210, 1229; *Fifth Ave. Coach Co.* v. *New York*, 194 N. Y. 19, 86 N. E., 824, 21 L. R. A. (N. S.), 744, 16 Ann. Cas., 695. Further, the use or license may be conditioned on the execution of a bond for the indemnification of those injured. So held in respect of motor-propelled vehicles in the recent cases of *State* v. *Howell* (Wash.), 147 Pac. 1159, *Greene* v. *City of San Antonio* (Tex. Civ. App.), 178 S. W. 6, *Ex parte Dickey* (W. Va.), 85 S. E., 781, and *Ex parte Cardinal*, supra.

133 Tenn. 7.

City of Memphis v. State *ex rel.*

We are of opinion that the statute is not subject to the objections urged by the appellee, and that therefore the lower court erred in its disposition of the case. Reversed and remanded; all costs to be paid by the relator.