12489

HUFFMAN *ET AL. v.* CITY OF COLUMBIA *ET AL.*

(144 S. E., 157)

1. AUTOMOBILES—ORDINANCE REQUIRING JITNEYS TO OPERATE ON PRE-
SCRIBED ROUTES AND SCHEDULES HELD VALID (ACT MARCH 2, 1871, §
10 [14 ST. AT LARGE, P. 572]; CIV. CODE 1922, § 4727; ACTS 1928, P.
1229).—Ordinance of City of Columbia requiring jitneys to operate
on prescribed routes and schedules *held* valid, under Act March
2, 1871, § 10 (14 St. at Large, p. 572), Civ. Code 1922, § 4727, and
Acts 1928, p. 1229, providing for control by certain cities of trans-
portation by motor vehicles.

2. MUNICIPAL CORPORATIONS—RIGHT TO CARRY ON PRIVATE BUSINESS
ALONG PUBLIC STREETS CAN BE EXERCISED ONLY UNDER CONDITIONS
IMPOSED BY CITY.—No one has inherent right to carry on private
business along public streets, but such right can be exercised only
under terms and conditions imposed by city authorities.

In the original jurisdiction.  Petition dismissed.

Original application by C. J. Huffman and others against
the City of Columbia and others to enjoin the enforcement
of an ordinance.

*Messrs. Timmerman & Graham,* for plaintiffs.

*Messrs. C. S. Monteith, I. F. Belser,* and *E. W. Mullins,*
for defendants.

July 24, 1928.

The opinion of the Court was delivered by MR. CHIEF
JUSTICE WATTS.

This is an application by petitioners to enjoin the enforce-
ment of an ordinance passed by the City of Columbia.
The return of the City of Columbia sets forth the reason
of the passage of the ordinance in question, and contends:

That the ordinance in question "is a valid exercise of
the police power vested in the City of Columbia, and is
fully justified by the public convenience and necessity.  The
fundamental basis of the city's exercise of this power is that
the use of the streets of the city for the purpose of carrying

NOTE: On the question as to power of municipality to regulate
jitneys operating in public streets, see annotation in 42 A. L. R., 282.

on the business of operating motor vehicles for hire is a privilege, and not an inherent right of its citizens. This privilege, therefore, if exercised, must be subject to the rules and regulations prescribed by the city."

"The burden of the petition in this case is that the ordinance is unreasonable and confiscatory, because it requires the jitneys to operate on prescribed routes and schedules." So the question to be determined is: Has the city the right to route and schedule all forms of motor vehicle transportation over its streets? We find the following Acts of the legislature:

(a) Act 1871—Section 10, from an Act to alter and amend the charter of the City of Columbia, approved March 2, 1871:

"Sec. 10. That the Mayor may, as often as occasion may require, or whenever requested so to do, in writing, by three aldermen, summon the aldermen to assemble in council; and that the said Mayor and aldermen shall have, and they are hereby vested with, full and ample power, from time to time, under their common seal, to make all such ordinances, rules and regulations, relative to the streets and markets of the said city, as they may think proper and necessary, and to establish such by-laws, not inconsistent with the laws of the land, as may tend to preserve the quiet, peace, safety and good order of the inhabitants thereof. * * *" 14 Stat., p. 572.

(b) Commission Form of Government Act—Section 4727, Code 1922:

"(4727) Sec. 9. *Powers of council.*—The council shall have, possess and exercise all executive, legislative and judicial powers and duties conferred upon such city, or theretofore belonging to it, with the power to establish such subordinate officers as they may see fit and assign to them appropriate duties, subject to the council. Each member of the council shall give to the duties of his office all the time that may be needed for the most efficient conduct of the affairs of the city." Page 1428.

(c)  Acts of 1928, p. 1229:

"An Act providing for the control by cities of more than thirty thousand and less than fifty thousand inhabitants of transportation by motor vehicles.

"Be it enacted by the General Assembly of the State of South Carolina:

"Section 1.  That the City Council of any city which at the last preceding United States census had a population of more than thirty thousand and less than fifty thousand inhabitants shall be and are hereby granted exclusive jurisdiction and control over any and all motor-propelled vehicles (which term shall not include vehicles usually operated upon or over rails) used for the transportation of persons or property for hire on any of the streets of said city (except buses operating on regular schedules and routes between such city and other points not less than ten miles distant therefrom), with full power and authority to make and enforce such rules, regulations and classifications governing the operation of such vehicles as they may deem necessary or desirable; to confine such vehicles, or special classes thereof, to particular streets or routes, and to exclude such vehicles, or special classes thereof, entirely from the streets; to fix the rates, fares and charges of such motor vehicle carriers; and to prescribe the license to be paid to the city by such carriers, and the amount and character of bond which they may be required to give.

"Sec. 2.  *  *  *  That the City Council shall have power to enforce the provisions of this Act, the powers hereby granted, and such rules and regulations as may be adopted pursuant thereto, by appropriate penalties.

"Sec. 3.  That all Acts or parts of Acts inconsistent herewith are hereby repealed.

"Sec. 4.  That this Act shall become effective immediately upon its approval by the Governor."

We find on this question the following authorities:

*Henderson v. City of Bluefield,* 98 W. Va., 640; 127 S. E., 492; 42 A. L. R., 279, holding (syllabus):

"A municipal ordinance making it unlawful for drivers or proprietors of taxicabs, motor busses, and jitneys to solicit passengers for hire on the streets of the municipality, to stand or park the same in the city closer than 100 feet of any railroad passenger station or the terminus of any interurban street railway car line, * * * should be upheld as having been enacted in the reasonable exercise of the police power of the municipality and its charter authority to pass ordinances for the regulation of automobiles and other vehicles within the municipality promotive of the interest or convenience of the inhabitants thereof.

"The validity of the ordinance, sole question for solution, depends upon the enactment of the ordinance as being a reasonable exercise of the police power and charter authority of the city. The proper exercise of the police power permits the municipality, independent of any statutory authority conferred upon it, to regulate the use and enjoyment of the streets in the interest of the public health, general welfare, and convenience of the people. *Bluefield v. Public Serv. Commission,* 94 W. Va., 334; 118 S. E., 546.

"A charter provision empowering municipal corporations to grant, refuse, or revoke license to owners of vehicles kept for hire therein, and to subject them to such regulation as the interest and convenience of the inhabitants thereof, in the opinion of the municipal authorities may require, delegates to the corporation full legislative power over such vehicles. *Ex parte Dickey (Dickey v. Dickey),* 76 W. Va., 587; 85 S. E., 781; —— L. R. A., 1915-F, 840; —— P. U. R., 1915-E, 93. * * *

"An enactment prohibiting any hackman from permitting his horse or vehicle to stand in any public street of a village, or to walk or drive through the streets soliciting patronage, was held valid in the case of *People ex rel. Van Norder v. Sewer, Water & Street Commission,* 90 App. Div., 555;

15—S. C. R.—146

86 N. Y. S., 445.   In answer to the contention that the law
was in conflict with the State Constitution as depriving the
relator, a hackman, of property without due process of
law, the opinion states:

" 'It seems to me a complete answer to this contention is
that the relator has no legal right to conduct his business
in a public street, except he does so under a lawful license
authorizing him so to do.   The law in question does not
prohibit the relator from engaging in the occupation of a
hackman, but simply lays down salutary rules, prohibiting
his soliciting patronage as such hackman in the public streets.'

"In modern times the power to regulate public conveyances
for hire, such as hacks, taxicabs, motorbusses, and jitneys,
inheres in the legislatures of the several States, but this
power may be, and usually is, delegated by the States to
the various municipalities within their borders.   The muni-
cipalities in pursuance of the authority delegated to them
by the States, may, as a valid exercise of the police power,
pass ordinances regulating the business of such conveyances.
Whether a particular ordinance is reasonable for the purpose
for which it is enacted is in the first instance to be determined
by the municipal authorities.   When they have acted and
the ordinance has been passed it is presumptively valid,
and, before a Court will be justified in holding it invalid,
its unreasonableness must be clearly made apparent.   While
it is true that municipal ordinances, to be valid, must be
reasonable, the presumption is in favor of their validity, and
it is incumbent upon any one seeking to have them set aside
as unreasonable to point out or show affirmatively wherein
the unreasonableness consists.   Tested by this rule, we are
of the opinion that the ordinance in question, as a salutary
regulation of traffic in the municipality, is reasonable and
valid.   *   *   *.' "

98 W. Va., 642; 127 S. E., 492; 42 A. L. R., 280, 281,
282.

Many cases supporting the foregoing decision are likewise abstracted in the note in 42 A. L. R., 282, as follows:

"In holding that a statutory provision making it unlawful for any hackman to 'permit any horse or vehicle to stand in any public street   *   *   *   for hire, or to walk or drive through the streets soliciting patronage,' did not deprive one of his property without due process of law, it was said in *People ex rel. Van Norder v. Sewer, Water & Street Commission* (1904), 90 App. Div., 555; 86 N. Y. S., 445, that the statute did not prohibit the relator from engaging in the occupation of a hackman, but simply laid down statutory rules prohibiting his soliciting patronage as such hackman in the public streets, the Court approving the forfeiture of a license where it violated an express condition embodying the language quoted.

"An ordinance which imposed an additional license fee upon jitneys and similar vehicles for hire, as a condition to their being permitted to solicit or receive passengers in certain designated streets in which trolley cars were operated, was declared by the Court to be practically prohibitive as to these streets in *Desser v. Wichita* (1915), 96 Kan., 820; 153 P., 1194; —— L. R. A., 1916-D, 246, and was held to be a valid exercise of municipal control, and not to be unjust, unreasonable, or oppressive, even though its effect was incidentally, or even necessarily, to benefit the street railway company.   *   *   *   And the same Court, sustaining the ordinance again in *Decker v. Wichita* (1921), 109 Kan., 796; 202 P., 89, overruled the contention that it deprived the jitney owners of their property and the. use of it in violation of the Constitution and said that all regulation had prohibitive features, that restrictions of that kind might be imposed for the convenience and protection of the public, and observed that the prohibitive features were not so dissimilar and discordant as to constitute distinct subjects.
*   *   *

"An ordinance providing that 'no owner or driver of an automobile truck or dray, jitney or other conveyance engaged in the business or occupation of conveying passengers or merchandise for hire,' should park, solicit business, or maintain a stand on the streets within a specified district of a city, was held in *McGuire v. Wilkerson* (1922) [22 Okl. Cr., 36]; 209 P., 445, not to be unreasonable, discriminatory, or arbitrary, nor to deprive the owner of an automobile for hire of his liberty or property without due process of law."

. We think that the city's right to route and schedule jitneys is fully sustained by the following authorities:

In a note on the case of *Hadfield v. Lundin* (Wash.), —— L. R. A., 1918-B, 909, the note beginning at page 912, as follows:

"The legislature has the power to confer upon cities authority to license and regulate the operation of jitney busses. *Dallas v. Gill* (Tex. Civ. App., 1918); 199 S. W. [1144].

"A city has the undoubted right to prevent the use of its streets by jitney busses. *Cummins v. Jones* (1916), 79 Or., 276; 155 P., 171.

"So, too, a city which has full control of its streets can grant the use of some streets and refuse the use of others for jitney purposes. *Peters v. San Antonio* (Tex. Civ. App., 1917); 195 S. W., 989.  *  *  *

"A statute regulating jitney busses is not invalid, as class legislation, because it excludes from its operation street cars and taxicabs, where it operates on all jitney busses alike. *Huston v. Des Moines* (1916), 176 Iowa, 455; 156 N. W., 883.  *  *  *

"So, also, an ordinance regulating jitney busses is not unconstitutional, as discriminatory class legislation, in that it imposes upon them taxes and restrictions which it does not impose upon the operators of auto stages, sightseeing automobiles, taxicabs, horse stages, street cars, and other carriers transporting passengers for hire within the city.

*Allen v. Bellingham* (1917), 95 Wash., 12; 163 P., 18.
\* \* \*

"That only jitneys which follow certain routes are permitted to go through certain streets is not an unwarranted discrimination that renders an ordinance regulating jitney busses invalid. *Peters v. San Antonio* (Tex. Civ. App., 1917); 195 S. W., 989."

Note, —— L. R. A., 1918-B, 913, 914.

"The commissioners of a city under its charter powers to regulate the use of its streets have authority to regulate the use of the streets by jitney busses despite the fact that there is a State Statute dealing with the subject-matter and regulating it from the viewpoint of State policy, where there is no express intent in such statute to repeal the charter authority or legislative intent to deal *de novo* with the entire subject. *Irwin v. Atlantic City* (1917), 90 N. J. Law, 99; 100 A., 565.

"A provision of a municipal ordinance regulating jitney busses that an applicant for license shall state in his application certain classified information regarding his car, the termini between which such motor bus is to be operated, and a schedule showing the times of departure from the termini, according to which he intended to operate such motor bus, is valid as a regulatory measure. *Huston v. Des Moines* (1916), 176 Iowa, 455; 156 N. W., 883.

"The operator of a jitney bus who regularly transports passengers for hire between two termini for a fixed compensation may not by varying his route from time to time between such termini change the classification of his vehicle. *Smith v. State* (1917), 130 Md., 482; 100 A., 778.

"The following regulations have been held to be reasonable:

"Requirement that jitney busses operate on fixed schedules over designated routes. *Allen v. Bellingham* (1917), 95 Wash., 12; 163 P., 18.

"Requirement that routes and schedules be fixed. *Huston v. Des Moines* (Iowa), *supra.*

"Requirements as to places for stopping. *Allen v. Bellingham* (Wash.), *supra.*

"Requirement that jitney bus carry signs and plates designating its route and its time schedule, with other matters."
Note, —— L. R. A., 1918-B, 915, 916.

*City of Memphis v. State of Tennessee ex rel. S. B. Ryals,* 133 Tenn., 83; 179 S. W., 631; —— L. R. A., 1916-B, 1151; —— Ann. Cas., 1917-C, 1056: This case holds that requiring a bond of the operators of jitney busses, when not requiring one from the owners of private automobiles, street car companies, or the owners of taxicabs, is not class legislation. In this case the Court said:

"However, classification for such purposes is not invalid because not depending on scientific or marked differences in things and persons, or in their relations. It suffices if it is practical, and it is not reviewable unless palpably arbitrary. *Orient Ins. Co. v. Daggs,* 172 U. S., 562; 19 S. Ct., 281; 43 L. Ed., 554, cited with approval in *State ex rel. Astor v. Schlitz Brewing Co.* [104 Tenn., 715; 59 S. W., 1033; 78 Am. St. Rep., 941], *supra.* 'When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.' *Motlow v. State,* 125 Tenn., 547; 145 S. W., 177 [—— L. R. A., 1916-F, 177], following *Lindsley v. National [Natural] Carbonic Gas Co.,* 220 U. S., 61; 31 S. Ct.; 337; 55 L. Ed., 369; —— Ann. Cas., 1912-C, 160. Having these principles in mind for guidance, we may conceive that, from the experience developed by the operation of jitney automobiles at the time of the enactment of the regulatory statute, the legislature deemed the provision for a bond to be necessary

because it realized that, by reason of the small fare charged by such operators, the tendency would be for them to invest in cheap or secondhand machines, oftentimes fragile in character; that frequently the vehicle would not be owned outright, but only subject to a lien or by way of lease; that, by reason of the limited size and carrying capacity of the conveyances, an increased congestion of the streets and public places would follow, as well as an overtaxing of the capacity of the given conveyance; that they would have no fixed track upon which to run, moving at will over the entire street surface, and in their crossing over and stopping along the curb between crossings, or at street crossings, danger to persons and property would be augmented; that, by reason of the competition of the many engaged in the business, frequent contests between the operators for points of vantage in the streets would follow; that there was a tendency fraught with danger in the many so engaged seeking the streets of heaviest travel for passengers, thus leading to congestion, as well as in hasty efforts made to head off and divert those waiting on the curb as offerers for passage on street railways; that the desire and necessity to collect many small fares would tempt operators to indulge in swift and careless running; that by reason of receiving and discharging passengers at short, unscheduled intervals there would be an interruption of traffic and an endangering of other vehicles in the streets; that by reason of the small investment required, many who are financially irresponsible would embark in the business; that the collection of damages from the operators would be difficult, and in many instances impossible." * * * 133 Tenn., 88; 179 S. W., 633; —— L. R. A., 1916-B, 1153, 1154.

The Court thereafter undertakes to define taxicabs and jitneys and quotes at length from *Ex parte Cardinal,* 170 Cal., 519; 150 P., 348; —— L. R. A., 1915-F, 850, showing the basis for distinction and discrimination between jitneys and taxicabs, and then concludes as follows:

"It is too clear for extended discussion that it was competent for the Legislature under the police power to regulate the use of the streets and public places by jitney operators, who, as common carriers, have. no vested right to use the same without complying with a requirement as to obtaining a permit or license. The right to make such use is a franchise, to be withheld or granted as the Legislature may see fit. Dill., Mun. Corp., §§ 1210, 1229. *Fifth Ave. Coach Co. v. New York,* 194 N. Y., 19; 86 N. E., 824; 21 L. R. A. (N. S.), 744; 16 Ann. Cas., 695. Further, the use or license may be conditioned on the execution of a bond for the indemnification of those injured. So held in respect of motor-propelled vehicles in the recent cases of *State ex rel. Case v. Howell,* 85 Wash., 294; 147 P., 1159 [—— Ann. Cas., 1916-A, 1231]. *Greene v. San Antonio* (Tex. Civ. App.), 178 S. W., 6. *Ex parte Dickey* [76 W. Va., 576]; 85 S. E., 781; —— L. R. A., 1915-F, 840; P. U. R., 1915-E, 93. And *Ex parte Cardinal* [170 Cal., 519]; 150 P., 348; L. R. A., 1915-F, 850; P. U. R., 1915-E, 282." 133 Tenn., 97; 179 S. W., 635; L. R. A., 1916-B, 1156.

See, also, to the same effect, the following cases already cited and referred to in the reference to L. R. A., 1918-B, 913: *Dallas v. Gill* (Tex. Civ. App., 1918); 199 S. W., 1144. *Huston v. Des Moines* (1916), 176 Iowa, 455; 156 N. W., 883. *Allen v. Bellingham* (1917), 95 Wash., 12; 163 P., 18. *West v. Asbury Park* (1916), 89 N. J. Law, 402; 99 A., 190. *Hadfield v. Lundin,* 98 Wash., 657; 168 P., 516; L. R. A., 1918-B, 909; Ann. Cas., 1918-C, 942.

The above case holds that there is no right to use a public highway in the operation of the business of a common carrier without consent of the State, and upholds the requirement of a proper indemnity bond. The language of this decision is in many cases strongly applicable to the case at bar:

"The streets and highways belong to the public. They are built and maintained at public expense, for the use of the general public in the ordinary and customary manner.

The State, and the city as an arm of the State, has absolute control of the streets in the interest of the public. No private individual or corporation has a right to the use of the streets, in the prosecution of the business of a common carrier for private gain without the consent of the State, nor except upon the terms and conditions prescribed by the State or municipality, as the case may be. The use of the streets as a place of business or as a main instrumentality of business is accorded as a mere privilege, and not as a matter of natural right. In *State v. Seattle Taxicab & Transfer Co.* [90 Wash., 416; 156 P., 837] *supra,* we said: 'As to those who were denied bonds, the act may be prohibitive, but this does not argue against its constitutionality. It in no manner proves that the regulation is unreasonable. Highways are constructed primarily as a convenient passageway for all of the people, and no one has an absolute right to use them for his own private gain, even though such use be to carry over them people who desire the service.'

"In *Greene v. San Antonio* (Tex. Civ. App.), 178 S. W., 6, it is said: 'So in this case appellant has never had any vested right to use the streets of San Antonio to engage in the business of a common carrier of passengers for hire, and no right of his is infringed or invaded by the ordinance requiring certain things to be done in order to enter into business on the streets, which have, at the expenditure of large sums, been placed by the city in prime condition for automobile travel. The streets belong to the public, the city being its trustee, and no private individual or corporation has a right to use such streets for the prosecution of a business without the consent of the trustee and a compliance with the conditions upon which the permission to so use them is given.' * * * See, also, to the same effect, *Memphis Street R. Co. v. Rapid Transit Co.* 133 Tenn., 99; 179 S. W., 635; L. R. A., 1916-B, 1143; Ann. Cas., 1917-C, 1045; P. U. R., 1916-A, 834. *Memphis v. State,* 133 Tenn., 83; 179 S. W., 631; L. R. A., 1916-B, 1151-1156; Ann.

Cas., 1917-C, 1056; P. U. R., 1916-A, 825. *Ex parte Dickey,*
*76* W. Va., 576; 85 S. E., 781; L. R. A., 1915-F, 840; P.
U. R., 1915-E, 93. *Ex parte Lee,* 28 Cal. App., 719; 153
P., 992. *Lutz v. New Orleans* (D. C.), 235 F., 978.

"These cases, though involving regulatory statutes or
ordinances, all recognize and are based upon the fundamental
ground that the sovereign State has plenary control of the
streets and highways, and in the exercise of its police power
may absolutely prohibit the use of the streets as a place for
the prosecution of a private business for gain.    They all
recognize the fundamental distinction between the ordinary
right of a citizen to use the streets in the usual way and
the use of the streets as a place of business or main instru-
mentality of a business for private gain.    The former is a
common right, the latter an extraordinary use.    As to the
former the legislative power is confined to regulation; as
to the latter it is plenary and extends even to absolute pro-
hibition.    Since the use of the streets by a common carrier
in the prosecution of its business as such is not a right, but
a mere license or privilege, it follows that the Legislature
may prohibit such use entirely without impinging any pro-
vision either of the State or Federal Constitution.    In *Allen*
*v. Bellingham,* 95 Wash., 12; 163 P., 18, we said: 'But
the use to which the appellant purposes putting the streets is
not their ordinary or customary use, but a special one.    He
purposes using them for the transportation of passengers
for hire, a use for which they are not primarily constructed.
As to such users we think the power of the municipality is
plenary in so far as this particular clause of the statute is
concerned.    It denies no form of regulation pertaining to
business of this character, even to the prohibition of the
business entirely.' "    98 Wash., 660; 168 P., 517; L. R. A.,
1918-B, pages 910, 911.

*Packard v. Benton,* 264 U. S., 140; 44 S. Ct., 257; 68
L. Ed., 596: In this case, decided by the United States Su-
preme Court in 1924, a statute (Laws N. Y., 1922, p. 1566)

requiring motor vehicles for hire operating on the streets of certain cities to carry $2,500 indemnity bonds, but exempting street railways and omnibuses, was upheld. The language of the Supreme Court in this case is in part quite pertinent:

"The contention most pressed is that the act unreasonably and arbitrarily discriminates against those engaged in operating motor vehicles for hire in favor of persons operating such vehicles for their private ends, and in favor of street cars and motor omnibuses. If the State determines that the use of streets for private purposes in the usual and ordinary manner shall be preferred over their use by common carriers for hire there is nothing in the Fourteenth Amendment to prevent. The streets belong to the public, and are primarily for the use of the public in the ordinary way. Their use for the purposes of gain is special and extraordinary, and generally, at least, may be prohibited or conditioned as the Legislature deems proper. Neither is there substance in the complaint that street cars and omnibuses are not included in the requirements of the statute. * * * Decisions sustaining the validity of legislation like that here involved are numerous, and substantially uniform. Among them, we cite the following: [*Nolen*] *v. Riechman* [D. C.], 225 F., 812, 818. *Schoenfeld v. Seattle* [D. C.], 265 F., 726, 730. *Lane v. Whitaker* [D. C.], 275 F., 476, 480. *Huston v. Des Moines,* 176 Iowa, 455, 468; 156 N. W., 883. *Memphis v. State,* 133 Tenn., 83, 89; 179 S. W., 631; L. R. A., 1916-B, 1151; Ann. Cas., 1917-C, 1056; P. U. R., 1916-A, 825. *Ex parte Dickey,* 76 W. Va., 576, 578; 85 S. E., 781; L. R. A., 1915-F, 840; P. U. R., 1915-E, 93. *Melconian v. Grand Rapids,* 218 Mich., 397, 403; 188 N. W., 521. *State v. Seattle Taxicab & Transfer Co.,* 90 Wash., 416, 423; 156 P., 837. * * * Moreover, a distinction must be observed between the regulation of an activity which may be engaged in as a matter of right, and one carried on by government sufferance or permission. In the latter case the power to exclude altogether generally

includes the lesser power to condition, and may justify a degree of regulation not admissible in the former.    See *Davis v. Massachusetts,* 167 U. S., 43; 17 S. Ct., 731; 42 L. Ed., 71." 264 U. S., 144; 44 S. Ct., 259; 68 L. Ed., 607, 608.

Also the *Trescot case,* 138 S. C., 337; 136 S. E., 481.

We think the ordinance in question should be sustained. It is essential and necessary for the welfare of the City of Columbia that it have regulated public transportation operated upon regular routes and schedules.

The city had the right to enact and enforce the ordinance in question.    No one has the inherent right to carry on his private business along the public streets. Such rights can be exercised only under such terms and conditions imposed by the city authorities.

The ordinance in question is reasonable and valid.    The injunction asked for is refused, and petition dismissed.

MESSRS. JUSTICES COTHRAN, BLEASE, STABLER and CARTER concur.